## SNYDER *v.* BUCK, PAYMASTER GENERAL OF THE NAVY.

No. 64.   Argued October 18, 1950.—Decided November 13, 1950.

16

[REDACTED]

*John Geyer Tausig* argued the cause for petitioner. With him on the brief was *Gibbs L. Baker.*

*John R. Benney* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison, Samuel D. Slade* and *Morton Hollander.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner sued in the District Court for a death gratuity under the Act of June 4, 1920, 41 Stat. 824, as amended, 34 U. S. C. § 943, claiming as the widow of a member of the naval service. Respondent, the defendant in the suit, was Paymaster General of the Navy. The relief asked was mandamus to compel him to pay the widow's allowance. The District Court held for petitioner, ordering respondent to pay her the amount of the allowance. 75 F. Supp. 902. That judgment was entered January 30, 1948. On March 18, 1948, notice of appeal was filed in the name of Rear Admiral W. A. Buck, Paymaster General of the Navy. On March 1, 1948, however, Buck had been retired and Rear Admiral Edwin D. Foster had succeeded him in the office.

Section 11 (a) of the Judiciary Act of 1925, 43 Stat. 936, 941, provided that ". . . where, during the pendency of an action . . . brought by or against an officer of the United States . . . and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall

be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved." [1]

Neither party made any effort within the six months period [2] to have Buck's successor in office substituted for him. The Court of Appeals therefore ruled that the

---

[1] Rule 19 (4) of the Rules of this Court provides that in such cases "the matter of abatement and substitution is covered by section 11 of the Act of February 13, 1925. Under that section a substitution of the successor in office may be effected only where a satisfactory showing is made within six months after the death or separation from office."

[2] This section was repealed as of September 1, 1948, 62 Stat. 992, 1000. It is argued that, since that date was the date on which the 6 months statutory period for substitution in this case expired and since the repealing Act preserved any rights or liabilities existing under any of the repealed laws (id., 992), § 11 governs this case. We need not reach the effect of the repealing Act. For the Court of Appeals during the period material to our problem had in force its Rule 28 (b) which provided that abatement and substitution were governed by § 11 of the 1925 Act.

Rule 25 (d), Rules of Civil Procedure, now provides: "When an officer of the United States, or of the District of Columbia, the Canal Zone, a territory, an insular possession, a state, county, city, or other governmental agency, is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued and maintained by or against his successor, if within 6 months after the successor takes office it is satisfactorily shown to the court that there is a substantial need for so continuing and maintaining it. Substitution pursuant to this rule may be made when it is shown by supplemental pleading that the successor of an officer adopts or continues or threatens to adopt or continue the action of his predecessor in enforcing a law averred to be in violation of the Constitution of the

action had abated; it then vacated the judgment and remanded the cause to the District Court with directions to dismiss the complaint.   85 U. S. App. D. C. 428, 179 F. 2d 466.

The complaint in this case makes no claim against Buck personally.   Therefore we put to one side cases such as *Patton* v. *Brady,* 184 U. S. 608, dealing with actions in assumpsit against collectors for taxes erroneously collected.   The writ that issued against Buck related to a duty attaching to the office.   The duty existed so long and only so long as the office was held.   When Buck retired from office, his power to perform ceased. He no longer had any authority over death gratuity allowances.   Moreover, his successor might on demand recognize the claim asserted and discharge his duty.   For these reasons it was held that in absence of a statute an action aimed at compelling an official to discharge his official duties abated where the official died or retired from the office.[3]   See *Secretary* v. *McGarrahan,* 9 Wall. 298, 313; *United States* v. *Boutwell,* 17 Wall. 604, 607–608; *Warner Valley Stock Co.* v. *Smith,* 165 U. S. 28, 31; *United States ex rel. Bernardin* v. *Butterworth,* 169 U. S. 600.

Congress changed the rule.   It provided by the Act of February 8, 1899, 30 Stat. 822, that no action by or against a federal officer in his official capacity or in relation to the discharge of his official duties should abate

United States.   Before a substitution is made, the party or officer to be affected, unless expressly assenting thereto, shall be given reasonable notice of the application therefor and accorded an opportunity to object."

[3] An exception was a suit to enforce an obligation of the corporation or municipality to which the office was attached.   See *Thompson* v. *United States,* 103 U. S. 480, 483, as explained in *United States ex rel. Bernardin* v. *Butterworth, supra,* p. 603, and in *Murphy* v. *Utter,* 186 U. S. 95, 101–102.

because of his death or resignation; and it provided a period in which substitution could be made.[4] See *LeCrone* v. *McAdoo,* 253 U. S. 217; H. R. Rep. No. 960, 55th Cong., 2d Sess.

The rule was again changed by § 11 of the Judiciary Act of 1925. The provision that no action should abate was eliminated. It was provided that the action might be continued against the successor on the requisite showing within the stated period. The revision effected a substantial change. The 1925 Act made survival of the action dependent on a timely substitution. *Defense Supplies Corp.* v. *Lawrence Co.,* 336 U. S. 631, 637–638. And see *Ex parte La Prade,* 289 U. S. 444, 456. Thus, where there was a failure to move for substitution within the statutory period, the judgment below was vacated and the cause was remanded with directions "to dismiss the cause as abated."[5] *United States ex rel. Claussen* v. *Curran,* 276 U. S. 590, 591; *Matheus* v. *United States ex rel. Cunningham,* 282 U. S. 802. This was a declared policy of Congress not to be altered by an agreement of the parties[6] or by some theory of estoppel. Nor did the application of § 11 turn on whether the judgment rendered prior to the death or resignation of the official was for or against the plaintiff. The inability of one who no longer holds the office to perform any of the official

---

[4] See note 5, *infra.*

[5] Under the earlier Act the passage of the period within which substitution could be made resulted in the proceeding being "at an end." *LeCrone* v. *McAdoo, supra,* p. 219. The practice of this Court was therefore to dismiss the writ, leaving undisturbed the judgments below. *LeCrone* v. *McAdoo, supra; United States ex rel. Wattis* v. *Lane,* 255 U. S. 566; *Payne* v. *Industrial Board,* 258 U. S. 613; *Payne* v. *Stevens,* 260 U. S. 705.

[6] In *United States ex rel. Claussen* v. *Curran, supra,* and *Matheus* v. *United States ex rel. Cunningham, supra,* the Solicitor General had expressed willingness for the successor to be substituted though the statutory period had expired.

duties would indeed only be emphasized by the rendition of the coercive judgment.

It is argued that § 11 should be read as covering only those "actions brought against officials for remedies which could not be got in a direct suit against the United States." Such a reading requires more than a tailoring of the Act; it requires a full alteration. Section 11 applies to "an action . . . brought by or against an officer of the United States . . . and relating to the present or future discharge of his official duties." Many actions against an official relating to the "discharge of his official duties" would in substance be suits against the United States. If the rule of abatement and substitution is to be altered in the manner suggested, the amending process is available for that purpose.

Section 11 by its terms applies only during the pendency of an action. But an action is nonetheless pending within the meaning of the section though an appeal is being sought (see *Becker Steel Co.* v. *Hicks,* 66 F. 2d 497, 499; *United States ex rel. Trinler* v. *Carusi,* 168 F. 2d 1014), as was implicit in *Matheus* v. *United States ex rel. Cunningham, supra.* For in that case a writ of habeas corpus, denied by the District Court, had been granted by the Circuit Court of Appeals. While the case was in the Circuit Court of Appeals the time expired for substituting the successor of the custodian against whom the prisoner had brought the action. Yet, as noted above, the Court applied § 11, vacated the judgments, and ordered the proceeding dismissed as abated.

There is a difference in the present case by reason of the fact that the appeal was taken by Buck after his retirement and therefore without authority. The judgment concerned the performance of official duties for which Buck was no longer responsible. Hence he was not in position to obtain a review of it. See *Davis* v. *Preston,* 280 U. S. 406. In the *Davis* case this Court

dismissed a writ of certiorari granted under such circumstances. The argument is that the Court of Appeals should have done no more in the present case. The difference is that the *Davis* case was a suit against the Federal Agent under the Federal Employers' Liability Act, 35 Stat. 65, in which a judgment was rendered against him. An Act of Congress made special provision for substitution in those cases.[7] The Court, however, held that this statute did not affect in any manner the appellate jurisdiction of this Court. But that Act preserved those judgments against abatement by reason of the death or retirement of the Federal Agent and allowed substitution at any time before satisfaction of the judgment. Therefore, on remand of the cause in the *Davis* case the successor Federal Agent could be substituted and the judgment enforced against him. On remand of the present cause there would be no way of substituting the successor, as the suit had abated in the District Court. Vacating the judgment of the District Court was therefore the proper procedure.

Nor is there any barrier to our review of this ruling on abatement by 28 U. S. C. § 2105 which prohibits a

---

[7] The Act of March 3, 1923, 42 Stat. 1443, provided in part: "That section 206 of the Transportation Act, 1920, is amended by adding at the end thereof two new subdivisions to read as follows: '(h) Actions, suits, proceedings, and reparation claims, of the character described in subdivision (a), (c), or (d), properly commenced within the period of limitation prescribed, and pending at the time this subdivision takes effect, shall not abate by reason of the death, expiration of term of office, retirement, resignation, or removal from office of the Director General of Railroads or the agent designated under subdivision (a), but may (despite the provisions of the Act entitled "An Act to prevent the abatement of certain actions," approved February 8, 1899), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of such final judgment, decree, or award the agent designated by the President then in office.'"

reversal by the Court of Appeals or this Court for error in ruling upon matters in abatement "which do not involve jurisdiction." The absence of a necessary party and the statutory barrier to substitution go to jurisdiction.

Petitioner loses her judgment and must start over.

*Affirmed.*

MR. JUSTICE FRANKFURTER, with whom MR. JUSTICE JACKSON joins, dissenting.

Natural professional interest in trying to disentangle the legal snarl presented by this case would not justify me in enlarging my dissent from the Court's views. But the state of the law regarding litigation brought formally against an official but intrinsically against the Government is so compounded of confusion and artificialities that an analysis differing from the Court's may not be futile.

At the outset it is desirable to dispel a misconception regarding the legislation on abatement of suits in the federal courts. In 1899, Congress for the first time made provision for the continuance of a suit involving official conduct which abated by a succession in office during pendency of the suit. 30 Stat. 822. By § 11 of the Judiciary Act of 1925, Congress again dealt with this problem. 43 Stat. 936, 941. The Court finds that the provision of the 1925 Act "effected a substantial change." It does this on the basis of the analysis of the first enactment made in *Defense Supplies Corp.* v. *Lawrence Warehouse Co.,* 336 U. S. 631, 637–638. According to what was there said, the Act of 1899 had a categorical command that "no action shall abate," which was eliminated in 1925. So to interpret the relation between the 1899 and the 1925 provisions is to misread legislation by quoting out of context and disregarding authoritative legislative history.

So far as concerns the legal effect upon the pendency of an action due to change in the occupancy of an office, a reading of the provisions of the 1899 and 1925 Acts can leave not a shadow of doubt as to their identity of purpose and procedure for its accomplishment. The difference between the two acts is a matter of English and not of law. In both, Congress assumed that a proceeding by or against an officer of the United States in relation to his official conduct would abate unless within a time certain the court authorized continuance of the proceeding by or against the successor in office. Only the phrasing of this rule differs. In the 1899 Act, Congress said that such an action shall abate unless leave is given for its continuance; in the 1925 Act, Congress said that unless leave is given for the continuance of such a suit it is at an end. To say, as we said in *Defense Supplies Corp.* v. *Lawrence Warehouse Co.,* that the 1899 Act "categorically" provided that "no action shall abate" is a mutilating reading. The dominant thought of an enactment controls the primary import of isolated words. To find that the 1925 Act "eliminated" this provision has significance only if what is meant is that certain words of the 1899 Act were "eliminated" while the thought was retained. The full texts of the two provisions, set forth in the margin, speak for themselves.[1] What emerges is that the two enactments have essentially the same function regarding

[1] Chapter 121 of the Laws of 1899, 30 Stat. 822, provided: ". . . That no suit, action, or other proceeding lawfully commenced by or against the head of any Department or Bureau or other officer of the United States in his official capacity, or in relation to the discharge of his official duties, shall abate by reason of his death, or the expiration of his term of office, or his retirement, or resignation, or removal from office, but, in such event, the Court, on motion or supplemental petition filed, at any time within twelve months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may allow the same to be maintained

the abatement and mechanism for securing survival of an action by or against an officer of the United States. The only difference is that the thought is expressed more felicitously in the later enactment, as would be expected from Mr. Justice Van Devanter, who, as is well known, was the chief draftsman of the Judiciary Act of 1925.

The range of the 1899 Act was changed in 1925, which may have stimulated its redrafting. The change concerned not in the slightest the legal consequences to pending suits where the occupancy of an office of the United States was involved. The only modification made by the 1925 Act, apart from cutting down the time for substitu-

---

by or against his successor in office, and the Court may make such order as shall be equitable for the payment of costs."

Section 11 of the Judiciary Act of 1925, 43 Stat. 936, 941, provided:

"(a) That where, during the pendency of an action, suit, or other proceeding brought by or against an officer of the United States, or of the District of Columbia, or the Canal Zone, or of a Territory or an insular possession of the United States, or of a county, city, or other governmental agency of such Territory or insular possession, and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved.

"(b) Similar proceedings may be had and taken where an action, suit, or proceeding brought by or against an officer of a State, or of a county, city, or other governmental agency of a State, is pending in a court of the United States at the time of the officer's death or separation from the office.

"(c) Before a substitution under this section is made, the party or officer to be affected, unless expressly consenting thereto, must be given reasonable notice of the application therefor and accorded an opportunity to present any objection which he may have."

tion to six months from twelve, was to extend the Act of 1899 so as to permit the substitution of successors of state and local officers as well as those of federal officials. The legislative histories of the 1899 and 1925 enactments, confirming the face of the legislation, demonstrate that the two enactments were conceived for the same purpose, were intended to have the same consequences, and are to be given the same significance, excepting only that the 1925 Act extended the range of applicability.

The Act of 1899 was a response to this Court's suggestion. See *United States ex rel. Bernardin* v. *Butterworth,* 169 U. S. 600, 605.[2] This was likewise true of the Act of 1925. See *Irwin* v. *Wright,* 258 U. S. 219, 223–224.[3] The opinion in that case was rendered on March 20, 1922, but while it was in the bosom of the Court, having been submitted on January 24, Chief Justice Taft sent to Senator Cummins a résumé of what was known as the "Judges' Bill," which became the Act of 1925. As to the matter

---

[2] "In view of the inconvenience, of which the present case is a striking instance, occasioned by this state of the law, it would seem desirable that Congress should provide for the difficulty by enacting that, in the case of suits against the heads of departments abating by death or resignation, it should be lawful for the successor in office to be brought into the case by petition, or some other appropriate method."

[3] "It may not be improper to say that it would promote justice if Congress were to enlarge the scope of the Act of February 8, 1899, so as to permit the substitution of successors for state officers suing or sued in the federal courts, who cease to be officers by retirement or death, upon a sufficient showing in proper cases. Under the present state of the law, an important litigation may be begun and carried through to this court after much effort and expense, only to end in dismissal because, in the necessary time consumed in reaching here, state officials, parties to the action, have retired from office. It is a defect which only legislation can cure." Chief Justice Taft used *Irwin* v. *Wright* as an illustration in his testimony before the House Judiciary Committee on March 30, 1922. Hearings before House Committee on the Judiciary on H. R. 10479, 67th Cong., 2d Sess. 7.

here under discussion, the Chief Justice said that the proposed bill "extends the right now given by statute, to substitute the successors of certain officers of the United States where the latter have died, resigned, or otherwise vacated their offices pending suit, so as to embrace the successors of officers of the District of Columbia, the Canal Zone, and the Territories and insular possessions of the United States, as well as of a State or political subdivision or agency thereof." Confidential Committee Print entitled "Jurisdiction of Circuit Courts of Appeals and of the Supreme Court," Senate Committee on the Judiciary, 67th Cong., 2d Sess. 4. The formulation of what was thus summarized by Chief Justice Taft is the present § 11, and that formulation was in the Judges' Bill from the time it was introduced in the two Houses by Senator Cummins and Congressman Walsh, respectively, on February 17, 1922.[4]

---

[4] See 62 Cong. Rec. 2686, 2737. The language concerning abatement was the same in the bills introduced in 1922 (S. 3164 and H. R. 10479, 67th Cong., 2d Sess.), in the bills introduced by Senator Cummins and Congressman Graham, respectively, in 1924 (S. 2060 and H. R. 8206, 68th Cong., 1st Sess.) and in the statute as enacted, 43 Stat. 936, 941.

I am partly responsible for the misconception of finding a substantive change between the significance of the 1899 Act and the 1925 Act because I joined in *Defense Supplies Corp.* v. *Lawrence Warehouse Co.*, 336 U. S. 631. It is not by way of extenuating my responsibility that I deem it pertinent to suggest that the nature and volume of the Court's business preclude examination of all the judicial and legislative materials of all opinions in which one concurs. In order that the energies of the Court may be concentrated on those cases for which adjudication by this Court is indispensable, I have been insistent in my view that the Court should be rigorous in limiting the cases which it will allow to come here. That it may so control its business, the Congress, by the Act of 1925, gave the Court—for all practical purposes—a free hand. See *Ex parte Peru*, 318 U. S. 578, 602–604.

The correctness of the result in *Defense Supplies Corp.* v. *Lawrence Warehouse Co., supra,* does not depend on the misconceived relation indicated in its opinion. But it ought not to form a part of the chain of reasoning in disposing of this case. Therefore, insofar as § 11 of the Act of 1925 [5] is relevant to our present problem, we must reject the notion that, while under the 1899 Act such an action as this, brought against Paymaster General Buck, "did not abate," the 1925 Act eliminated this "command."

This brings us to the circumstances of the case. The petitioner claims to be the lawful widow of a naval officer. She brought this action to recover a death gratuity allowance, amounting to $1,365, payable under the Act of June 4, 1920. 41 Stat. 824, as amended, 34 U. S. C. § 943. Jurisdiction was alleged under the Tucker Act, 24 Stat. 505, as amended, and other statutes. Nominally, the action was for mandamus to compel Buck, the Paymaster General of the Navy, to make payment. The District Court refused to grant relief by mandamus, but, in accordance with modern practice, granted what it thought to be the proper remedy. The judgment, after enjoining Buck from persisting in his refusal to make payment, concluded: ". . . and the defendant is directed to pay the plaintiff Thirteen Hundred and Sixty-five Dollars ($1,365.00) which is the amount equal to six months' pay at the rate received by the deceased at the time of his death."

---

[5] Section 11 of the 1925 Judiciary Act, 43 Stat. 936, 941, was repealed as of September 1, 1948. 62 Stat. 992, 1000. The repealing Act, however, preserved any rights or liabilities existing under the laws repealed. 62 Stat. 869, 992. Since the six-month statutory period within which substitution can be made expired on September 1, 1948, the repeal of § 11 does not affect the case at bar. Abatement of actions brought against officials is now governed, in the District Courts, by Rule 25 (d) of the Federal Rules of Civil Procedure, which also provides a six-month period for substitution.

The District Court judgment was entered on January 30, 1948. Admiral Buck was retired as Paymaster General on March 1. Notice of appeal was, nevertheless, filed in his name by Government attorneys on March 18. The issue of abatement was not raised until the Government attorney called the fact of Buck's retirement to the attention of the Court of Appeals upon oral argument, which occurred after the six-month period for substitution had passed. The Court of Appeals vacated the judgment of the District Court and remanded with directions to dismiss the complaint as abated.

1. I agree with the Court that this was not a personal action against Admiral Buck, and that the judgment was not against him as an individual. That suits against a collector of revenue for illegal exactions under the Revenue Acts are deemed personal actions enforceable as such against the collector is an anomalous situation in our law which calls for abrogation instead of extension. For the history of these actions, see *Cary* v. *Curtis,* 3 How. 236, and *United States* v. *Nunnally Investment Co.,* 316 U. S. 258.[6]

2. The starting point, then, is recognition of the fact that this was a suit to secure a money claim due from the United States, enforced against the officer who was the effective conduit for its payment. In short, this was a representative suit, and the crucial question, I submit, is the reach of the representative character of the suit.

The intrinsic and not merely formalistic answer to this question is of course entangled with the doctrine of sovereign immunity from suits. In scores of cases this Court

---

[6] The problems raised by the personal liability of collectors have necessitated special legislation. See I. R. C., § 3770 (b), 26 U. S. C. § 3770 (b), R. S. § 3220, as amended (authority to reimburse collectors), and I. R. C., § 3772 (d), 26 U. S. C. § 3772 (d), 56 Stat. 956. (Suits against collectors are treated as suits against the United States for purposes of *res judicata.*)

has had to consider when a suit, though nominally against one holding public office, is in fact a suit against the Government and as such barred by want of the sovereign's consent to be sued. See *Larson* v. *Domestic & Foreign Commerce Corp.,* 337 U. S. 682, App. 729. The subject, it has been recognized, is not free from casuistry because of the natural, even if unconscious, pressure to escape from the doctrine of sovereign immunity which—whatever its historic basis—is hardly a doctrine based upon moral considerations. The trend of deep sentiment, reflected by legislation and adjudication, has looked askance at the doctrine. See *Keifer & Keifer* v. *R. F. C.,* 306 U. S. 381, 390–392. If astuteness has been exercised to deny the representative character of an official in order to avoid his identification as the sovereign *ad hoc,* it runs counter to the rational administration of justice not to find an official the sovereign *ad hoc* and the suit against him, in effect, a suit against the sovereign when sovereign immunity is not circumscribed thereby.

Under the Court of Claims Act, 12 Stat. 765, as amended, the plaintiff here could have gone to the Court of Claims.[7] By the Act of March 3, 1887, 24 Stat. 505, as amended, she could have brought suit in the District Court. When the sovereign has in fact given consent formally to be sued as such on the very claim and to allow, in the same court and by the same procedure (trial without a jury), precisely the same relief as was sought and obtained against the official in his representative capacity, it would needlessly enthrone formality to deny the intrinsic nature of the suit to be a suit against the sovereign. And that is this situation. Certainly those charged with the duty of defending the interests of the United States so

[7] *Campbell* v. *United States,* 80 Ct. Cl. 836; *Hill* v. *United States,* 68 Ct. Cl. 740; *Maxwell* v. *United States,* 68 Ct. Cl. 727; *Thomson* v. *United States,* 58 Ct. Cl. 207; *Phillips* v. *United States,* 49 Ct. Cl. 703.

conceived it.   By denominating Admiral Buck as "Pay-master General of the Navy" in his notice of appeal, the United States Attorney recognized that Paymaster General Buck was, as it were, merely an alias for the United States, the real client of the United States Attorney.   The Government, indeed, has consistently recognized that justice does not call for abatement of the suit.   Both here and below it has disavowed a desire for abatement.   Of course, if it were a fixed rule of law that a suit such as this should die when the nominal defendant dies, the Court would have to bow to it, however harsh and futile the rule.   It required legislation represented by Lord Campbell's Act to make tort liability survive the death of the victim.   But it is not the controlling policy of the law that such actions die upon change of office-holders. The policy of the law is to the contrary, even as to suits which could not be brought against the Government directly.   So also, it has long been the policy of our law to look behind an office-holder nominally a party litigant in order to find that, for all practical purposes, it is a suit against the Government and therefore not maintainable. Justice should be equally open-eyed in order to find behind the nominal official defendant the United States as the real defendant.

This seems to me to be the spirit of the decision in *Thompson* v. *United States,* 103 U. S. 480.   To be sure, Mr. Justice Bradley there differentiated his identification of an officer of a municipality with the municipality from the situation of an officer of the United States because normally the Government could not be sued.   But when the Government does allow itself to be sued for the same cause of action for which suit was brought against him who for the purposes of the litigation is the United States, the reason for the differentiation disappears.

The differentiation remains in actions brought against officials for remedies which could not be got in a direct

suit against the United States. These are the situations in which substitution cannot come into play automatically and involve recourse to the remedial legislation of 1899 and 1925 in their present form. This gives ample scope to the legislation and at the same time avoids treating procedural requirements as tyrannical commands satisfying no other end except sterile formality.

Accordingly, I would recognize that the judgment of the District Court is in effect a money judgment against the United States and would allow the Government's notice of appeal the force it was intended to have as an effective instrument whereby the United States might obtain a review of that judgment. It would be nothing novel in the observance of decorous form by courts to note as a matter of record that the name of the Paymaster General of the Navy is now Fox and to proceed with the appeal on that basis.[8]

A final question has to be faced—a question which should, in logic, have been treated first, for it concerns the

---

[8] *Davis* v. *Preston*, 280 U. S. 406, was a suit under the Federal Employers' Liability Act of 1908, 35 Stat. 65, brought to recover for the death of a railroad employee occurring while the railroad was being operated by the Director General. The Court held a petition for certiorari ineffective when taken in the name of an agent of the Government who had retired from office. A statute there applicable, however, required that the United States conduct the litigation in the name of a special agent. 41 Stat. 461. There is no such requirement in the case at bar, for suit could have been brought against the United States itself. Since this is true, the Court can scarcely refuse to give effect to the notice of appeal filed by the Government attorneys in the name of Buck as Paymaster General.

Mr. Justice Van Devanter discussed only the effectiveness of the appeal, for the Court was faced with no problem of abatement. Congress had made clear its policy of protecting suitors against the pitfalls of abatement by passing the Winslow Act, 42 Stat. 1443, to make certain that the 1899 statute would not prevent recovery for persons injured or killed during the Government operation of the railroads. This statute allowed substitution of a successor agent at

power of this Court to decide the case. Section 2105 of 28 U. S. C. provides: "There shall be no reversal in the Supreme Court or a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction." I agree with the Court that this statute is not applicable, but not on the ground that lack of substitution is a question of "jurisdiction." Section 2105 relates only to the modern equivalent of a common law plea in abatement, which was made in the trial court before issue was joined on the merits of the case.[9] It can have no effect upon a decision by an appellate court that a suit has abated.

Mr. Justice Clark, with whom Mr. Justice Black concurs, dissenting.

Since the duty sought to be enforced in this action attached to the office of Paymaster General and rested upon Admiral Buck only so long as he held the office, it is clear that petitioner's claim is against Buck in his representa-

---

"any time before satisfaction of such final judgment, decree, or award." The broad legislative policy reflected in the Winslow Act points to a reliance upon substance, rather than form, in the present case.

[9] The predecessor section, 28 U. S. C. (1946 ed.) § 879, R. S. § 1011, as amended, provided:

"There shall be no reversal in the Supreme Court or in a circuit court of appeals upon a writ of error, for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or for any error in fact."

Section 22 of the Judiciary Act of 1789, 1 Stat. 84, provided:

". . . But there shall be no reversal in either court [i. e., the Circuit Court or Supreme Court] on such writ of error for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or such plea to a petition or bill in equity, as is in the nature of a demurrer, or for any error in fact. . . ."

The Reviser's Note to § 2105 indicates that "matters in abatement" was substituted for "plea in abatement" because of the change in terminology under the Federal Rules.

tive capacity, not personally. After his retirement it was not within his power to comply with the District Court's injunction, and the judgment ceased to be enforceable against him.[1] Consequently Buck lacked standing to obtain review of the judgment on appeal.[2] Thus far I agree. with the conclusions of the Court.

But I think that when the attorney for the Government called to the Court of Appeals' attention—after this suit had been pending there for more than a year—that the appeal had been taken by Buck after his retirement and that no appeal had been perfected by or on behalf of his successor, the court should have dismissed the appeal on its own motion.[3] That is the action which this Court took in *Davis* v. *Preston*, 280 U. S. 406 (1930), when review had been allowed at the instance of a federal officer who, it later appeared, because of separation from office had

---

[1] Cf. *Commissioners* v. *Sellew*, 99 U. S. 624, 627 (1879); *United States ex rel. Emanuel* v. *Jaeger*, 117 F. 2d 483, 488 (C. A. 2d Cir. 1941).

[2] *Davis* v. *Preston*, 280 U. S. 406 (1930).

[3] *In re Michigan-Ohio Bldg. Corp.*, 117 F. 2d 191 (C. A. 7th Cir. 1941); *United Porto Rican Sugar Co.* v. *Saldana*, 80 F. 2d 13 (C. A. 1st Cir. 1935).

Appeal from the District Court in the instant case was governed by Federal Rule 73 (1946) which provided at all relevant times as follows:

"(a) . . . When an appeal is permitted by law from a district court to a circuit court of appeals the time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law, except that in any action in which the United States or an officer or agency thereof is a party the time as to all parties shall be 60 days from such entry, and except that upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment the district court in any action may extend the time for appeal not exceeding 30 days from the expiration of the original time herein prescribed. . . .

"A party may appeal from a judgment by filing with the district court a notice of appeal. Failure of the appellant to take any of

34

not had standing to petition for certiorari. A unanimous court dismissed the writ as improvidently granted, stating:

> "A motion is now made by Andrew W. Mellon, as Federal Agent, for his substitution in the present proceeding in the place of Davis. But the motion must be denied. The succession in office, as now appears, occurred before there was any effort to obtain a review in this Court. After the succession Davis was completely separated from the office and without right to invoke such a review . . . . Therefore his petition must be disregarded. The time within which such a review may be invoked is limited by statute and that time has long since expired. To grant the motion in these circumstances would be to put aside the statutory limitation and to subject the party prevailing in the [court below] to uncertainty and vexation which the limitation is intended to prevent." *Id.* at 408.[4]

---

the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal . . . .

"(b) . . . The notice of appeal shall specify the parties taking the appeal . . . ."

It has been held that under Federal Rule 73 timely and proper notice of appeal goes to the jurisdiction of the Court of Appeals, *United Drug Co.* v. *Helvering,* 108 F. 2d 637 (C. A. 2d Cir. 1940); *Lamb* v. *Shasta Oil Co.,* 149 F. 2d 729 (C. A. 5th Cir. 1945); *Marten* v. *Hess,* 176 F. 2d 834 (C. A. 6th Cir. 1949); *Tinkoff* v. *West Pub. Co.,* 138 F. 2d 607 (C. A. 7th Cir. 1943); *St. Luke's Hospital* v. *Melin,* 172 F. 2d 532 (C. A. 8th Cir. 1949); *Spengler* v. *Hughes Tool Co.,* 169 F. 2d 166 (C. A. 10th Cir. 1948); *Walleck* v. *Hudspeth,* 128 F. 2d 343 (C. A. 10th Cir. 1942); see *Maloney* v. *Spencer,* 170 F. 2d 231, 233 (C. A. 9th Cir. 1948); and that this requirement cannot be dispensed with by waiver or consent of the parties. See *Lamb* v. *Shasta Oil Co., supra,* at 730; *Marten* v. *Hess, supra,* at 835; *St. Luke's Hospital* v. *Melin, supra,* at 533. Compare *Crump* v. *Hill,* 104 F. 2d 36 (C. A. 5th Cir. 1939) with *Piascik* v. *Trader Navigation Co.,* 178 F. 2d 886 (C. A. 2d Cir. 1949).

[4] Accord, *Nudelman* v. *Globe Varnish Co.,* 312 U. S. 690 (1941).

This Court now concludes that *Davis* v. *Preston* is inapposite because in that case, unlike the situation before us, applicable legislation prevented abatement of the suit against Davis following his separation from office. But the point made in the *Davis* case was simply that the succession in office had preceded Davis' effort to obtain review by this Court and pertinent statutes did not enable the former federal officer to invoke review of a judgment which was of no legal concern to him. And in this case since an appeal was not properly taken within the time allowed, it does not matter at this time whether the District Court judgment could be enforced by plaintiff against Buck's successor, by substitution of the latter as defendant or by other action.[5]

It is the decision of this Court that the failure of the appellee to substitute the judgment defendant's successor under § 11 of the Judiciary Act of 1925 excuses the Government's prior failure to perfect a valid appeal from a final judgment against one of its officers. In short, the Court places on an appellee the burden of correcting his adversary's error. From this result I dissent.

---

[5] It seems that plaintiff would not be without a remedy which would give life to her judgment obtained in a court of competent jurisdiction against a federal officer who at the time of judgment had full authority in the premises. In *Sunshine Anthracite Coal Co.* v. *Adkins*, 310 U. S. 381, 402–403 (1940), the Court said: "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government. See *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620. The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy."