CHAIRMAN OF UNITED STATES MARITIME COMMISSION v. CALIFORNIA EASTERN LINE, Inc.

No. 11448.

United States Court of Appeals District of Columbia Circuit.

Argued on Motion to Remand Oct. 27, 1952.

Decided April 16, 1953.

Messrs. Frederick N. Curley and Edward H. Hickey, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Messrs. Harold B. Finn, New York City, *pro hac vice*, by special leave of Court, and Robert E. Kline, Jr., Washington, D. C., for respondent.

Mr. Joseph P. Tumulty, Jr., Washington, D. C., for Viking Corp., *amicus curiae*, filed a memorandum urging that petitioner's motion be denied.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a renegotiation case, in which a motion was made by Government counsel to remand the cause to the Tax Court of the United States with instructions to vacate its decision. The ground of the motion was that the position of the Government official named as respondent in the Tax Court proceeding has been abolished and the cause has abated for want of substitution of the successor to his functions.

In 1949, the Chairman of the United States Maritime Commission determined that the California Eastern Line, Inc., had made excessive profits in 1942 under an allegedly renegotiable contract. California Eastern thereupon petitioned the Tax Court for a redetermination under the Renegotiation Act, as amended, 50 U.S.C.A. Appendix, § 1191, naming the Chairman of the Maritime Commission as respondent. A hearing was held in the Tax Court in March 1951 on the question whether the contract in issue was subject to the Renegotiation Act. The Tax Court held, in February 1952, that the contract was not a renegotiable contract within the meaning of Section 403(c) (1) of the Act. 1952, 17 T.C. 1325. On April 25, 1952, a petition for review addressed to this court was filed by Government counsel with the clerk of the Tax Court. The case was docketed in this court on June 3, 1952. On July 18, 1952, the instant motion was filed by counsel for the Government.

## I.

The moving papers rely on the fact that under Reorganization Plan No. 21 of 1950, which became effective May 24, 1950, the United States Maritime Commission and the Office of its Chairman were abolished, and those functions of the Commission and of its Chairman which are relevant here were transferred to the Secretary of Commerce. 64 Stat. 1273, 46 U.S.C.A. § 1111 note. The Plan was adopted pursuant to the provisions of the Reorganization Act of 1949, 5 U.S.C.A. § 133z et seq., which included the following provision in Section 9:

"No suit, action, or other proceeding lawfully commenced by or against the head of any agency or other officer of the United States, in his official capacity or in relation to the discharge

of his official duties, shall abate by reason of the taking effect of any reorganization plan under the provisions of sections 133z to 133z–15 of this title, but the court may, on motion or supplemental petition filed at any time within twelve months after such reorganization plan takes effect, showing a necessity for a survival of such suit, action, or other proceeding to obtain a settlement of the questions involved, allow the same to be maintained by or against the successor of such head or officer under the reorganization effected by such plan or, if there be no such successor, against such agency or officer as the President shall designate." June 20, 1949, c. 226, Title I, § 9, 63 Stat. 206, 5 U.S.C.A. § 133z–7(b).

Counsel for the Government argues that since California Eastern did not file a motion or supplemental petition in the Tax Court within the twelve-month period following May 24, 1950, requesting that the action survive against the Secretary of Commerce, the cause abated and the Tax Court was without jurisdiction to render its decision.

In support of its motion, the Government urges that an appellate court can and should prevent a lower court from disregarding the principles of abatement. It contends that if a judgment has been rendered which does not give proper effect to the abatement of the cause, the appellate court should exercise its supervisory jurisdiction to require the outstanding judgment to be vacated, while on the other hand if the lower court has properly abated an action, the appellate court should allow the judgment of abatement to stand. The decisions go far toward establishing these general propositions.[1]

In any event we think we must consider whether there is now outstanding an invalid judgment in an abated cause, which should be prevented "from spawning any legal consequences." United States v. Munsingwear, Inc., supra note 1, 1950, 340 U.S. at page 41, 71 S.Ct. at page 107.

■ We turn, then, to the statute on which the Government relies. The Reorganization Act of 1949, in the provision above-quoted relative to abatement, speaks of a "suit, action, or other proceeding". This must mean a suit, action, or proceeding before a court, for the second clause of the provision says "the court" may allow survival. The statute's primary purpose was evidently to ameliorate the harsh consequences of the common-law abatement rules usually applicable to judicial proceedings.[2] Any effect it has in causing termination of a "suit, action, or other proceeding" would appear to be secondary. Administrative proceedings, as far as we can discover, have never been held to be subject to the common-law rules of abatement. In principle they should not be, and a statute should not be interpreted as making them so subject unless the legislative intent clearly so requires. Changes in the personnel or organization of the executive branch should not be permitted, without good purpose, to delay or hinder the citizen in his dealings with any part of it.

The renegotiation proceedings had in this case were wholly administrative in nature. There could be no judicial review until after the Tax Court rendered its decision. The proceeding in the Tax Court was not an adversary action: it did not require judgment against some person or agency. Rather its goal was a redetermination, following the initial executive determination, of the

1. United States v. Seigel, 1948, 83 U.S.App.D.C. 88, 168 F.2d 143; Davis v. Preston, 1930, 280 U.S. 406, 50 S.Ct. 171, 74 L.Ed. 514; Defense Supplies Corp. v. Lawrence Warehouse Co., 1949, 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931; Snyder v. Buck, 1950, 340 U.S. 15, 20–21, 71 S.Ct. 93, 95 L.Ed. 15; United States v. Munsingwear, Inc., 1950, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36; and McGrath v. National Association of Manufacturers, 1952, 344 U.S. 804, 73 S.Ct. 31.

2. Cf. Defense Supplies Corp. v. Lawrence Warehouse Co., supra, 336 U.S. at pages 636–637, 69 S.Ct. at page 764: "The statute states categorically that 'no action shall abate.' * * * If Congress states that no action shall abate, we fail to see why we should make additional language a proviso." See also Snyder v. Buck, supra, 340 U.S. at page 19, 71 S.Ct. at page 95.

amount by which the contractor's profits were excessive. 50 U.S.C.A.Appendix § 1191(e) (1). Neither was the Tax Court proceeding a review: it is to "be treated as a proceeding de novo." *Ibid*. In such cases, the head of the agency alleging excessive profits is named as respondent, under the rules of the Tax Court. But he is named by title as an impersonal officer, not as an individual person.[3] Throughout the proceedings, whether the matter is before the primary agency or before the Tax Court, the citizen is still seeking or resisting an executive determination; the matter is still in the bosom of the executive branch. In the words of the governing statute, the Tax Court is "an independent agency in the Executive Branch of the Government", which "shall be known as The Tax Court * * *." 26 U.S.C.A. § 1100. It has been consistently held to be not a court, but "an executive or administrative board".[4]

In renegotiation proceedings before the Tax Court, the doctrines of abatement and substitution applicable to judicial proceedings are not in our view required for the protection either of the citizen or of the Government. On the Government's side, it is the national treasury which, in any event, will ultimately gain or lose as against the citizen. And the hazard that the proper Government official may not be named as respondent under the rules of the Tax Court presents no serious difficulty. In the instant case, no affirmative relief was asked against the Chairman of the Maritime Commission in the Tax Court proceedings; the Tax Court was simply to review his order and redetermine the matters there involved. Abatement on the ground that the Chairman was no longer in office or his office no longer in existence would not bear any re-

lation to the realities of the situation, and would defeat the ends of justice. We would not willingly reach that result unless required to do so by legislation or proper administrative rule. In the present case we find no such statutory or administrative requirement. Accordingly we deny the Government's motion to remand the cause to the Tax Court with directions to vacate its judgment.

## II.

After argument of the Government's motion, we raised on our own initiative—and asked the parties to brief—a further jurisdictional question, based on the following facts: The petition to this court, filed on April 25, 1952, was captioned "Chairman of the United States Maritime Commission, Petitioner for Review vs. California Eastern Line, Inc., Respondent-Appellee." The petition begins by saying: "The United States of America hereby respectfully petitions for review of the Decision of the Tax Court of the United States. * * * This review is sought by the United States of America." Nothing in the petition advised this court that there was no Chairman of the United States Maritime Commission then in office, or that the functions of the Chairman had long since been transferred to the Secretary of Commerce. It was not until July 18, 1952, when the motion to remand was filed by Government counsel, that this court was advised of the facts. The Secretary of Commerce has not appeared, or sought to appear, in the cause.

On these facts, the question presented is one of jurisdiction over the parties. We hold in this case that the provisions of Section 9 of the Reorganization Act concerning abatement are inapplicable to proceedings in the Tax Court in which an

---

3. Rule 64–II, 26 U.S.C.A. § 1111. In tax cases Rule 12 of the Tax Court requires that a copy of the petition be served upon "the Commissioner." No person is named by name. The proceeding does not abate if a Commissioner leaves office or dies. Cf. Rusk v. Commissioner of Internal Revenue, 7 Cir., 1931, 53 F.2d 428; 26 U.S.C.A. § 1143. Rule 64 of the Tax Court provides that in renegotiation cases the same rules apply and that when the rules say "Commis-

sioner" they shall refer to "the Board" or "the Secretary" as used in the Renegotiation Act. It further provides that in renegotiation proceedings "the Board" or "the Secretary * * * shall be shown as the respondent."

4. Old Colony Trust Co. v. Commissioner of Internal Revenue, 1929, 279 U.S. 716, 725, 49 S.Ct. 499, 502, 73 L.Ed. 918; Rusk v. Commissioner of Internal Revenue, 7 Cir., 1931, 53 F.2d 428.

agency or officer later affected by a reorganization plan is named as respondent. The same must be said of the corollary substitution provisions of that section. The status of the present proceedings in this court is therefore not governed by the parties' failure to comply with those substitution provisions.[5] The question, rather, is whether we now have before us a justiciable controversy, between proper parties. We start with the judgment of the Tax Court, validly entered insofar as any problem of abatement and substitution is concerned. Was either the "Chairman of the U. S. Maritime Commission" or the "United States of America" entitled to challenge that judgment in the courts?

▮▮▮ The statute provides that the Tax Court shall "finally determine" the amount of excessive profits in renegotiation proceedings, and that its decision shall not be reviewable. 50 U.S.C.A.Appendix, § 1191 (e) (1). But we have held that an administrative agency cannot finally determine the extent of its own jurisdiction, and hence that judgments of the Tax Court in renegotiation cases may be examined in this court to determine whether jurisdictional or constitutional limits have been exceeded.[6] Our review takes place pursuant to

Section 1141 of Title 26 of the United States Code, the general statute governing review of Tax Court decisions. In a tax case brought under that section, "the Commissioner" (of Internal Revenue) may petition for judicial review, 26 U.S.C.A. § 1142, and if the office changes hands while such a case is pending before the Tax Court or an appellate court, no substitution occurs or is required.[7] In renegotiation cases, the statute is not specific on these points. Cf. United States Electrical Motors v. Jones, 80 U.S.App.D.C. at page 332, 153 F.2d at page 137. But the statute does say, 50 U.S. C.A.Appendix, § 1191(e) (1), that in renegotiation cases the Tax Court shall have the same "powers and duties," in respect of the parties, as it has under the Internal Revenue Code provisions governing Tax Court procedure.[8] We think it clear that procedure in tax and renegotiation cases in the Tax Court is intended to be as nearly as possible the same. A like principle should be applied to proceedings in this court.

Neither statute nor Tax Court rule makes specific provision for the problem arising if the office of "Commissioner" is abolished.[9] The statutory provision negating any requirement of substitution deals

---

5. Cf. Defense Supplies Corp. v. Lawrence Warehouse Co., 1949, 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931, in which it was held that an appellate court had no jurisdiction to review a cause on the merits where the respondent "called for review after the period given for substitution [of a Government official] had expired." 336 U.S. at page 638, 69 S. Ct. at page 765. But in that case the statutory provisions for abatement and substitution were applicable to the proceedings in the tribunal below. The provisions of Section 9 are not applicable to the *judicial* proceedings in this case, begun after the judgment of the Tax Court was rendered and after Reorganization Plan No. 21 became fully effective. The only actions to which Section 9 applies would appear to be those "lawfully commenced by or against" a Government official who is later stripped of his relevant functions, or otherwise affected, by a reorganization plan.

6. Knu-Vise, Inc., v. War Contracts Price Adjustment Board, 1952, 90 U.S.App.D.

C. 218, 195 F.2d 198; Lowell Wool By-Products Co. v. War Contracts Price Adjustment Board, 1951, 89 U.S.App.D.C. 281, 192 F.2d 405; United States Electrical Motors v. Jones, 1946, 80 U.S.App. D.C. 329, 153 F.2d 134.

7. See fn. 3, supra. 26 U.S.C.A. § 1143 provides that "When the incumbent of the office of Commissioner changes, no substitution of the name of his successor shall be required in proceedings pending * * * before any appellate court reviewing the action of the Tax Court."

8. Including the section giving the Tax Court power to make rules of practice and procedure, 26 U.S.C.A. § 1111. "Commissioner," of course, is broadly defined in renegotiation cases. See note 3, supra.

9. Compare Reorganization Plan No. 26 of 1950, effective July 31, 1950, 15 Fed.Reg. 4935, 64 Stat. 1280, which transfers all functions of the Commissioner of Internal Revenue to the Secretary of the

rather with the problem arising "when the incumbent of the office of Commissioner changes". But the policy of preserving the continuity of litigation in the one case points to a like result in the other. Under this view, a petition filed here in the name of the Chairman of the Maritime Commission should be held sufficient to warrant our review, even though the office has been abolished and the former incumbent has become a private citizen. We need not, however, go so far.

■ The petition here stated in its text that it was brought on behalf of the United States. We think that fact should be given effect. The United States, in its fiscal aspect, was the true opponent of the claims of the contractor before the administrative agency: it did not need to intervene in the proceeding before the Tax Court, for the governing statute had in substance placed it there. Congress had authorized the Tax Court to give relief to an aggrieved contractor, and had not deemed it necessary to say specifically that the United States or anyone else should be named as defendant. The Tax Court by its rules created the requirement that a respondent be expressly named—but even so (as we have seen) it required that an officer of the United States be named, in his capacity as an official and not in his individual capacity. For reasons akin, therefore, to those which led us to hold that the proceeding in the Tax Court did not abate, we hold that the petition for review filed in the name of the United States was sufficient to invoke our jurisdiction.[10]

At the same time, we think this proceeding should not continue further without the appearance before us of the official who has succeeded to the powers and functions of the Chairman of the Maritime Commission. Proper exercise of the powers of this court, as well as full protection of the interests of the taxpayer, makes the appearance here of the Secretary of Commerce as a party to this cause desirable if not necessary.[11] The Secretary of Commerce will be given twenty days within which to move to join himself as a party, and to move to correct the caption of the cause. If he fails to do so, we will entertain a motion to dismiss the proceeding.

III.

The California Eastern Line has filed a motion to dismiss the Government's petition on the ground that this court lacks jurisdiction by reason of the nature of the question presented, contending it is not one of those which this court will review under the doctrine of United States Electrical Motors v. Jones, supra. We defer decision on that motion, as it deals with the substance of the petition for review. The case will be set down for hearing on the merits after the briefs have been filed.

So ordered.

Treasury. The latter is empowered to authorize the performance of those functions by any other officer, agency, or employee of the Department of the Treasury. The office of Commissioner is not abolished, but its powers are subject to diminution.

10. Our decision in United States v. Seigel, 1948, 83 U.S.App.D.C. 88, 168 F.2d 143, does not dictate otherwise. There, we held that "one who is not a party to a record and judgment is not entitled to appeal therefrom." 83 U.S.App.D.C. at page 89, 168 F.2d at page 144. But the present proceeding is not an appeal—it is an original judicial proceeding, commenced by petition to review the decision of an administrative body. The Seigel case therefore seems to us inapplicable here.

11. Compare Land v. Dollar, 1951, 88 U.S. App.D.C. 162, 188 F.2d 629, certiorari denied 1951, 340 U.S. 948, 71 S.Ct. 530, 95 L.Ed. 684; Land v. Dollar, 1951, 88 U.S.App.D.C. 311, 190 F.2d 366; Land v. Dollar, 1951, 89 U.S.App.D.C. 38, 190 F.2d 623; Id., 1952, 344 U.S. 806, 73 S.Ct. 7.