Larry D. FITZGERALD, Mayor, City of Maryland Heights, Plaintiff-Appellant,

and

City of Maryland Heights, Intervenor–Plaintiff–Respondent,

v.

John T. SAFFA, Jr., President pro tem, City Council, City of Maryland Heights, et al., Defendants–Respondents.

No. 54639.

Missouri Court of Appeals, Eastern District, Division Three.

April 11, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 9, 1989.

Application to Transfer Denied June 13, 1989.

Daniel P. Card, II and James Lawrence Durham, Clayton, for plaintiff-appellant.

Howard Paperner and Timothy James Walk, Clayton, for defendants-respondents.

SIMON, Judge.

Larry D. FitzGerald, appellant, appeals from the trial court's order finding that the City of Maryland Heights' appointment of the City Administrator as budget officer, in accordance with Ordinance 141, Section 2, complies with §§ 67.020 and 77.300 RSMo (1986). (All further statutory references shall be to RSMo (1986) unless otherwise noted). Intervenor-plaintiff, City of Maryland Heights (City) has filed its brief as respondent. No brief was filed on behalf of defendants-respondents, members of the City Council of Maryland Heights (City Council).

On appeal, FitzGerald, formerly the Mayor of the City, contends the trial court erred in: (1) holding that Ordinance 141 was in compliance with state statutes; (2) granting relief in a default judgment greater than the prayer in the petition; and (3) refusing to set aside the default judgment because the judgment was beyond the jurisdiction of the court where no case or controversy was presented which would au-thorize the entry of a declaratory judgment. We dismiss the appeal.

Maryland Heights is a city of the third class located within St. Louis County. On October 17, 1985, the City Council unanimously passed Ordinance 141 establishing the fiscal year and budget procedures for the City. Specifically, Ordinance 141, Section 1, sets the fiscal year of the City to begin on the first day of January of each year and Section 2 provides for the City Administrator to compile a budget to be submitted to the City Council for adoption prior to January 1 of each year.

Sometime thereafter, the record does not reflect the date, the City Administrator prepared and presented a proposed budget for 1987. The budget was passed by the City Council and was vetoed by Mayor Fitz-Gerald. On December 26, 1986, a special meeting of the City Council was called. Mayor FitzGerald placed his proposed budget for 1987 on the agenda for approval by the City Council. Several City Council members objected stating that the Mayor's proposed budget violated Ordinance 141, Section 2 which provided for the City Administrator to prepare and propose a budget. Mayor FitzGerald contended that Ordinance 141, Section 2, was not in compliance with §§ 67.020 and 77.300.

Section 67.020 sets forth the following:

1. The budget shall be prepared under the direction of a budget officer. Except as otherwise provided by law, charter, or ordinance, the budget officer shall be designated by the governing body of the political subdivision. All officers and employees shall cooperate with and provide to the budget officer such information and such records as he shall require in developing the budget. The budget officer shall review all the expenditure requests and revenue estimates, after which he shall prepare the proposed budget as defined herein.

2. After the budget officer has prepared the proposed budget, he shall submit it, along with such supporting schedules, exhibits, and other explanatory material as may be necessary for the proper understanding of the financial needs and

position of the political subdivision, to the governing body. He shall submit at the same time complete drafts of such orders, motions, resolutions, or ordinances as may be required to authorize the proposed expenditures and produce the revenues necessary to balance the proposed budget.

Section 77.300 sets forth the following:

The mayor shall make a written report to the council, on or before the first day of July of each year, which report shall contain his estimate of the necessary appropriations to meet all the wants of the current year, and the estimated receipts from licenses, taxes and other sources, and which shall also show the actual financial condition of the city.

Ordinance 141, Section 2 provides in pertinent part:

Section 2. Computation of Annual Budget. The City Administrator shall compile a budget containing estimates of the revenues available before the beginning of the fiscal year to which it applies together with recommended expenditures for the municipality and all of its boards, commissions and departments. Said budget shall be submitted to the City Council which shall adopt a budget prior to January 1 of each year.

After debating the issue, the City Council placed on the agenda a resolution authorizing the city attorney to file a declaratory judgment action to determine whether Ordinance 141 conforms with state statutes. The City Council passed this resolution on January 15, 1987.

On November 2, 1987, the city attorney filed a petition naming Larry D. FitzGerald, Mayor, City of Maryland Heights, as plaintiff, seeking a declaration as to the validity of Ordinance 141, Section 2, insofar as it authorizes the City Administrator to compile a budget. Members of the City Council, John Saffa, Robert Lynch, James Pavelec, Judith Barnett, Sylvia Fear, Gary Hawkins, Glennon Bourbor, and Jerry Eise, were named as defendants. The petition alleged that § 77.300 authorizes only the mayor to present the budget and that Ordinance 141, Section 2, allowing the City Administrator to present the budget was in violation of state law.

On February 24, 1988, the city attorney by leave, amended the petition adding the City as an additional party plaintiff pursuant to Rule 87.04 and entered his appearance as attorney for the City. The defendants, members of the City Council, did not file a responsive pleading and on February 29, 1988, a default judgment was entered. In its judgment, the trial court set forth the following:

Default and inquiry having been previously granted, the Parties all having notice of this hearing, the Court takes up the matter for hearing. The cause is submitted upon pleading and proof. The Court finds that Section 2 of Ordinance 141 of the City of Maryland Heights appoints the City Administrator as the buget [sic] officer within the meaning of 67.020, RSMo; the provisions of Ch. 67 RSMo, are more specific and more current than the general provisions of section 77.300, and therefore prevail. Further, the Court finds that the provisions of Ordinance No. 141 authorizing the City Administrator to compile the anual [sic] buget [sic] for the City of Maryland Heights is in accordance with State Statute.

Thereafter on March 14, 1988, a private attorney entered his appearance as counsel for FitzGerald, in FitzGerald's capacity as Mayor of the City, and motioned to set aside the default judgment on the grounds that the city attorney did not adequately present to the court significant, relevant information, and denied the court the benefit of an adversary proceeding. This motion was denied on March 30, 1988. On April 6, 1988, FitzGerald appealed the judgment. On May 10, 1988, the legal file was filed and on June 27, 1988, the transcript was filed. On September 22, 1988, FitzGerald filed his brief.

On July 21, 1988, a Bill of Impeachment for Larry D. FitzGerald was passed by unanimous vote of the City Council at its regular meeting. A copy of the Bill of Impeachment was personally delivered to FitzGerald on July 21, 1988. FitzGerald

was also informed of the hearing of impeachment to begin on September 6, 1988. Upon the request of FitzGerald, 22 subpoenas were issued, and upon the request of the City Council, 2 subpoenas were issued. FitzGerald was present and represented by counsel at the hearing. The hearing began on September 6, 1988 and continued on September 8, 13, 14, 15, and 24, 1988.

On September 27, 1988, the City Council, having unanimously voted affirmatively against Mayor Larry D. FitzGerald on all points of the Bill of Impeachment set forth Findings of Facts and Conclusions of Law and declared Larry D. FitzGerald to be impeached from the office of Mayor of the City and declared the office of Mayor to be vacant. On September 30, 1988, FitzGerald received a copy of the City Council's Findings of Facts, Conclusions of Law and Decision.

On October 3, 1988, the City filed its motion to dismiss the appeal on the grounds that FitzGerald, pursuant to the impeachment, was separated from the office of Mayor and may no longer obtain review of an adverse judgment in an action brought by him in his capacity as Mayor. On November 18, 1988, the City filed a supplemental legal file containing a copy of the City Council's Findings of Facts, Conclusions of Law and Decision as to the impeachment. The motion to dismiss the appeal was taken with the case and it will be addressed initially.

The declaratory judgment action was filed pursuant to a resolution passed by the City Council. It named FitzGerald in his capacity as Mayor of the City. It is not disputed that on September 27, 1988, FitzGerald was impeached from the office of Mayor of the City by a unanimous vote of the City Council. The issue is whether he can seek review of an adverse judgment in a suit brought in his capacity as Mayor, an office from which he is now separated.

Section 507.100 is dispositive as to this issue. Section 507.100 provides in pertinent part:

\* \* \* \* \* \*

5. When any public officer is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued and maintained by or against his successor upon motion made within one year. Before a substitution is made, the party or officer to be affected, unless expressly assenting thereto, shall be given reasonable notice of the application therefor and accorded an opportunity to object. If no successor is otherwise appointed or elected, the court in which the action is pending may appoint a successor for the prosecution or defense of the action.

Additionally, Rule 52.13(d), dealing with the same subject matter, provides in pertinent part:

\* \* \* \* \* \*

(d) Public Officers—Death or Separation from Office. When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution. When a public officer sues or is sued in his official capacity, he may be described as a party by his official title rather than by name, but the court may require his name to be added.

Rule 52.13(d), however, does not provide the time limit on substitution as provided in § 507.100.5. We have not been directed to a similar factual situation, but our attention has been directed to 4 Am.Jur.2d *Appeal and Error* § 233 (1962) which provides:

A public officer or public board may appeal or bring error proceedings from a judgment, order, or decree to which it is a party and by which it is aggrieved. After his separation from office, however, a public officer is no longer in a position to obtain review of an adverse

judgment in an action brought by or against him in that capacity.

As authority, 4 Am.Jur.2d § 233 relies on *Snyder v. Buch,* 340 U.S. 15, 71 S.Ct. 93, 95 L.Ed. 15 (1950). In *Snyder,* a widow brought a mandamus action against Rear Admiral Buch, Paymaster General of the Navy, to compel payment of a death gratuity. Buch retired and Rear Admiral Foster succeeded him in office, but the appeal was nonetheless filed in the name of Rear Admiral Buch. *Id.* 71 S.Ct. at 94–96[1]. The appeal was taken after Buch's retirement and the United States Supreme Court held the appeal was thus without authority. The judgment concerned performance of official duties for which Buch was no longer responsible; therefore, Buch was not in a position to obtain review of it. *Id.* at 96[6–8].

We have also reviewed 4 C.J.S. *Appeal and Error* § 404 (1957) which provides:

It is a generally recognized rule that if a party to appellate proceedings divests himself or is divested of his entire interest in the subject matter of the controversy, the proceedings will be dismissed when the fact is properly brought to the attention of the reviewing court, unless there is a statutory permission to the contrary, or unless, as will be considered in the following section, there has been or may be a substitution of parties. The rule does not apply unless the transfer is complete, so as to divest appellant of all his interest in the subject matter. . . .

Here, the record does not reflect a successor to the office of Mayor of the City, nor has a motion for substitution of Fitz-Gerald's successor been made. FitzGerald seeks a review of the trial court's determination of the validity of Ordinance 141, Section 2, in relation to his rights and duties as Mayor. Clearly, whatever rights and duties FitzGerald may have had under the ordinance and/or state statutes terminated upon his separation from the office of Mayor. We have not been advised of any desire of the City to prosecute this appeal. Significant time has elapsed since FitzGerald's impeachment, and no action has been taken to substitute for him. Un-less his successor is substituted, the appeal must be dismissed.

Appeal dismissed.

DOWD, P.J., and HAMILTON, J., concur.