EVERLASTING DEVELOPMENT CORP. et al. v. SOL LUIS DESCARTES et al.

No. 5645.

United States District Court, D. Puerto Rico, San Juan Division.

March 6, 1951.

Juan Rodriguez De Jesus, Francisco Ponsa Feliu, Raul Trujillo Santiago and Mariano Canales Delgado, all of San Juan, Puerto Rico, Meyer, Goldberg & Hollings, Charleston, S. C., for plaintiffs.

Atty. Gen. of Puerto Rico, Abe Fortas, Washington, D. C., José Trias-Monge, San Juan, Puerto Rico, for defendants.

ROBERTS, District Judge.

This is an action for declaratory judgment of the right of plaintiffs to tax exemption under The Industrial Tax Exemption Act of Puerto Rico, Law No. 184, of the Legislature of Puerto Rico, May 13, 1948, hereafter referred to as Tax Exemption Act. Plaintiffs, on June 30, 1948, filed a joint petition for industrial tax exemption with the Executive Council of Puerto Rico, requesting tax exemption under Sections 2a and 2b of the Tax Exemption Act. Their petition was denied by the Executive Council on November 23, 1949, and plaintiffs thereafter brought this action under

the federal declaratory judgment law, 28 U.S.C.A. §§ 2201–2202.[1]

Plaintiffs' allege that the denial by defendants of their request for tax exemption violates the Fifth Amendment to the Constitution of the United States and the Organic Act of Puerto Rico, 39 Stat. 951, as amended, 48 U.S.C.A. § 737, in that "the action of the defendants denies to the plaintiffs the equal ·protection of the laws and deprives them of their property without due process of law; and further subjects them to an unequal and discriminatory taxation" and that the plaintiffs "have been, are, and will be subjected to gross oppression by reason of the aforesaid conduct of the defendants; and that these plaintiffs do not have any further administrative remedy, nor any remedy whatsoever in the Insular Courts of Puerto Rico."

The relief prayed is for declaration that plaintiffs are eligible for and entitled to tax exemption; that plaintiffs having complied fully with all the prerequisites of the statute and regulations, tax exemption should be granted; that the denial of tax exemption to plaintiffs constitutes a denial of the equal protection of the laws and deprives plaintiffs of their property without due process of law and subjects plaintiffs to unequal and discriminatory taxation.

The defendants have moved that the complaint be dismissed, asserting that this court lacks jurisdiction of the subject matter and that the complaint fails to state a claim upon which relief may be granted.

The cause is now before the court on the defendants' motion to dismiss.

■ It is to be recognized that where a suit is brought for the purpose of challenging either the assessment or collection of a state tax, the character of the remedial procedures invoked therein, do not have the effect of changing the essential nature of such an action as one intended to result ultimately in the avoidance of the assessment or collection of such tax, Nashville, C. & St.L. Ry. v. Wallace, 288 U.S. 249, 261–262, 53 S.Ct. 345, 77 L.Ed. 730; Lawrence Print Works, Inc. v. Lynch, 1 Cir., 146 F.2d 996; and that, in the instant suit, while plaintiffs pray a declaration that they are entitled to tax exemption and that a denial thereof violates their constitutional rights, the object of the suit is to avoid payment of taxes that either have been or will be imposed upon the plaintiffs as a consequence of their petition for tax exemption having been denied by defendants.

■ The proposition that suits seeking declarations with respect to state taxes are in effect actions brought to avoid payment of such taxes had its genesis in sound reason and is well supported by the authorities. In Collier Advertising Service, Inc. v. City of New York, D. C., 32 F.Supp. 870, the action was for declaratory judgment concerning the obligation of plaintiff to collect certain taxes under a state sales tax act. Question was whether such a declaration came within the prohibition of the Johnson Act, August 21, 1937, 50 Stat. 738,[2] now 28 U.S.C.A. § 1341,[3] which

1. Sec. 2201. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
Sec. 2202. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

2. Sec. 41(1) "* * * Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

3. Sec. 1341. "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

statute restricts the jurisdiction of the federal courts to entertain suits wherein it is sought to enjoin, suspend, or restrain collection of state taxes to those cases wherein the taxpayer is not afforded a plain, speedy and efficient remedy in the state courts. Noting that the declaratory judgment statute is procedural and that, if granted, such declaration would have the effect of suspending the operation of the state tax act, the court held such declarations to be within the prohibition of the Johnson Act. The decision clearly holds that a suit in which such declaration is sought is in its essence a suit to avoid payment of state taxes. The reasoning of the court is convincing. 32 F.Supp. page 872. "The question persists whether or not the ban of the Johnson Act includes suits for a declaration where injunction is an unnecessary relief. We think that the action for declaration is within the ban. The Johnson Act does not concern itself with any distinctions between causes of action or particular forms of relief. It denies jurisdiction to the District Court to suits to enjoin, suspend or restrain assessment and collection of State taxes. It would be disingeneous to deny that a declaration of the plaintiff's claimed rights in this action would secure any other result than to enjoin, suspend and restrain the operation of the Sales Tax Law upon its business. Any other holding would substantially nullify the Johnson Act. The declaration is an adjudication; not an abstraction. It was observed, in Socony-Vacuum Oil Co. v. City of New York, 247 App.Div. 163, 287 N.Y.S. 288, that a natural presumption expects public officials to respect the Court's declaration and to follow its interpretation of the law. Such voluntary submission averts the need of an injunction but accomplishes precisely the same result."

That the relief sought is a declaration of the right to tax exemption appears to be immaterial. In Miller v. City of Greenville, Miss., 8 Cir., 138 F.2d 712, plaintiff city sought a declaration that a portion of a bridge over the Mississippi river within the state of Arkansas, owned by the city of Greenville, was exempt from taxation by that state. The court, following the doc-trine of the Huffman case, Great Lakes D. & D. Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407, said, 138 F.2d page 719: "But the facts in this case do not justify maintenance of this action under the federal declaratory judgment statute. * * * The object of the suit is to avoid assessment and collection of state taxes and the same considerations upon which the federal courts of equity have declined, save in exceptional cases, to relieve against state taxes claimed to be unlawful, are controlling in suits under the declaratory judgment statute."

The decision in Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145, is not in conflict with the decisions cited above. In that case it was held merely that the declaratory judgment statute provided, in addition to the existing coercive remedies, a new remedy in the form of a declaration of rights. The jurisdictional question presented in the instant case was not presented in the Gully case, supra, because it was decided prior to the enactment of the Johnson Act which restricted the jurisdiction of the District Courts in this respect.

In Paul Smith Const. Co. v. Buscaglia, 1 Cir., 140 F.2d 900, the Court of Appeals for the First Circuit held that a suit for declaratory judgment concerning the invalidity of a tax imposed under the laws of Puerto Rico was within the ban of the Butler Act, March 4, 1927, 44 Stat. 1421, 48 U.S. C.A. § 872. This decision clearly implied that suits seeking declarations concerning insular taxes are suits to avoid assessment or collection of such taxes because the sole purpose of the Butler Act is to deprive this court of jurisdiction to entertain suits brought to restrain the assessment or collection of an insular tax.

The instant case then, despite resort to the declaratory judgment procedures and the absence of a prayer for injunctive or other coercive relief, is a suit to avoid the payment of an insular tax and is to be decided in the light of those principles of law that govern decision in case of such nature where injunctive relief expressly is sought. The controlling question is, therefore, jurisdictional, for as above stated, it was the purpose of the Butler Act to re-

strict if not to totally deprive, this court of jurisdiction to entertain suits wherein it is sought to restrain the assessment or collection of an insular tax. The Butler Act, an anti-injunction statute of a purport similar to that of 28 U.S.C.A. § 1341, formerly the Johnson Act, reads as follows: "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico."

Read without qualification, the Butler Act constitutes so comprehensive a prohibition, that no suit wherein it is sought, either directly or indirectly, to restrain the collection of a tax imposed under insular law may be maintained in this court, including suits utilizing the declaratory judgment procedures. Sancho v. National City Bank of New York, 1 Cir., 112 F.2d 998; Paul Smith Const. Co. v. Buscaglia, supra. However, the Court of Appeals said in the Paul Smith case, supra, that it has never been called upon to decide whether the Butler Act is subject to implied exception with respect to cases involving exceptional circumstances. Specifically, the court said, 140 F.2d page 901: "We have never been called upon to decide whether the Butler Act, despite its unqualified language, is to be read as subject to implied exceptions 'in special and extraordinary circumstances' * * *. If such exceptions are to be admitted they would only be in cases 'when the taxpayer is put to the direst necessity, and can make out a case of gross and indisputable oppression, without an adequate remedy at law.' Concentrate Mfg. Co. v. Higgins, 2 Cir., 1937, 90 F.2d 439, 441. No such extreme situation is presented here."

It might well be then, that if the plaintiffs here, as they allege, are without "any remedy whatsoever in the Insular Courts of Puerto Rico", the instant case would come within the meaning of the term "special and extraordinary circumstances" used by the Court of Appeals in the Paul Smith case, supra. If that were so, this court, by virtue of reading such an implied exception into the Butler Act, could acquire jurisdiction, although as will later appear, it would, under the doctrine of the Huffman case, supra, be required to decline to exercise that jurisdiction.

However, it does not appear that the plaintiffs here are without any remedy whatsoever in the insular courts. As a consequence of their having been denied tax exemption under the Tax Exemption Act, there either has been or will be a tax assessed against them. They have open to them under insular law a procedure through which they may litigate the validity of the tax so assessed. The alleged violations of their constitutional rights may be asserted as vigorously in that litigation as in any action which they might conceivably bring to litigate directly the legality of the denial of tax exemption to them.

Act No. 169 of the Legislature of Puerto Rico, May 15, 1943, as amended, provides an adequate procedure to which the plaintiffs may resort to litigate the validity of any tax imposed upon them under insular law. Under the terms of Act No. 169, a taxpayer, upon furnishing bond to secure the tax in controversy, may appeal such tax to the Tax Court of Puerto Rico. In the event of an adverse decision in that court, the taxpayer may, upon payment of the tax under protest, appeal to the Supreme Court of Puerto Rico to the federal appellate courts as is provided expressly in 28 U.S.C.A. § 1293. [4]

Nor are these plaintiffs barred from recourse to the appeal procedure described above by reason of Section 16, of the Tax Exemption Act. Said Section 16, a so-called finality clause, by its terms purports to bar the taking of any administrative or judicial action against the findings or resolutions of the Executive Council made

4. Sec. 1293. "The courts of appeals for the First and Ninth Circuits shall have jurisdiction of appeals from all final decisions of the supreme courts of Puerto Rico and Hawaii, respectively in all cases involving the Constitution, laws or treaties of the United States or any authority exercised thereunder, in all habeas corpus proceedings, and in all other civil cases where the value in controversy exceeds $5,000, exclusive of interests and costs."

pursuant to the provisions of the Tax Exemption Act, the section declaring all such resolutions and findings to be final. Said section 16 reads as follows: "Section 16. All resolutions and findings of the Executive Council and of the Governor of Puerto Rico under the provisions of this Act, shall be final, and no judicial or administrative proceeding shall lie against the same."

▇ Conceding that said section 16 purports to bar any judicial review of the findings upon which the Executive Council based its denial of tax exemption to the plaintiffs here, its express terms clearly limit its operative effect to the Tax Exemption Act, and it cannot be construed as constituting a bar to resort to the tax appeals procedure of Act No. 169 by the plaintiffs here, with respect to the tax assessed, or to be assessed, as a consequence of the denial of tax exemption to them. Nor can it be construed as operating to bar them from asserting their constitutional rights in an action undertaken in pursuance to the appeal procedure of Act No. 169. It cannot be disputed that it is beyond the legislative power to prevent courts of competent jurisdiction from inquiring into the constitutionality of acts of administrative agencies through the device of statutory declarations as to the finality of the decisions of such agencies. The question of whether it is within the power of a legislative body to circumvent judicial review in cases where an invasion of constitutional rights is asserted has been the subject of exhaustive examination by the courts, and the decisions unanimously sustain the proposition that legislative bodies are without such power. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61; Norton v. Cass County, 5 Cir., 115 F.2d 884, 886. The authorities clearly hold that the constitutional requirements for judicial review cannot be defeated by legislative declaration and that a statute which had such an operative effect would itself be unconstitutional.

▇ But, whether Section 16 operates so as to bar judicial review where constitutional rights allegedly have been violated and is, therefore, unconstitutional, is not material to the issue in the instant case. Clearly, it does not, nor does it purport to, effect the right of the plaintiffs here to pursue the procedures for tax appeal provided in Act No. 169 for the purpose of litigating the validity of a tax assessed against them. And it is immaterial that such a tax be assessed against them as a consequence of their being denied tax exemption by the defendants. When the insular courts acquire jurisdiction by reason of the plaintiffs bringing an action pursuant to the tax appeals procedures of insular law, it will be the duty of those courts to inquire into the merits of the alleged violations of the constitutional rights of the plaintiffs and to preserve those rights unimpaired. That it is obligatory upon the Tax Court of Puerto Rico to make such inquiry is made clear by the decision in Fiddler v. Tax Court, 65 P.R.R. 189, 191–192.

In Estep v. United States, supra, Mr. Justice Murphy, speaking for the Court, defined this duty of the courts in clear and unequivocable language, 327 U.S. page 126, 66 S.Ct. page 429, 90 L.Ed. 567: "Before a person may be punished for violating an administrative order due process of law requires that the order be within the authority of the administrative agency and that it not be issued in such a way as to deprive the person of his constitutional rights. *A court having jurisdiction to try such a case has a clear, inherent duty to inquire into these matters so that constitutional rights are not impaired or destroyed.* Congress lacks any authority to negative this duty or to command a court to exercise criminal jurisdiction without regard to due process of law or other individual rights. To hold otherwise is to substitute illegal administrative discretion for constitutional safeguards. As this Court has previously said, 'Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits

of constitutional authority.'" (Emphasis supplied.)

■ This duty of the courts to safeguard the constitutional rights of litigants extends in full force to the courts of the states. In Baker v. Atchison, T. & Santa Fe Ry. Co., 10 Cir., 106 F.2d 525, 530, it was said: "True, plaintiff charges a violation of rights guaranteed to it by the due process and equal protection clauses of the Fourteenth Amendment. But state courts bear equal responsibility with federal courts to guard and protect rights secured by the Constitution of the United States. * * * And there is no basis here for the conclusion that the state courts in Colorado will fail in the discharge of their obligation to protect unimpaired every right of plaintiff which is guaranteed to it by the due process and equal protection clauses."

That insular law affords these plaintiffs an adequate remedy for litigating the validity of any tax imposed upon them as a consequence of their being denied tax exemption is clear. That the rights guaranteed them by the Constitution will be protected and preserved in the course of such proceedings is equally clear. It is to be concluded, therefore, that the plaintiffs here have an adequate remedy under insular law and that this court is without jurisdiction. And it is, therefore, unnecessary to consider whether the Butler Act may be construed as being subject to an implied exception with respect to cases where a taxpayer has no adequate remedy at law. For even if it were to be held that the Butler Act should be so construed, it would be without effect in the instant case, the plaintiffs having an adequate remedy under insular law.

■ However, in order to remove any last vestige of doubt concerning the unavailability of this court to the plaintiffs in the instant cause, it should be made clear that even if this court did have jurisdiction, in view of the doctrine of the Huffman case, supra, it would be required, in the exercise of its sound discretion, to dismiss the suit without consideration of the merits of the plaintiffs' asserted right to tax exemption.

In that case the Supreme Court notes that, even before the Congress expressly prohibited interference by the federal courts with the collection of state taxes where the taxpayer has a plain, speedy and efficient remedy in the state courts, by the enactment of the Johnson Act, it had been the well established policy of the federal courts of equity to refuse to interfere by injunction with the collection of state taxes where the taxpayer had an adequate remedy in the state courts, Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447, and characterizes the Johnson Act as legislation enacted in approval of that policy of the federal equity courts. In this respect the Court said, 319 U.S. page 298–299, 63 S.Ct. page 1073, 87 L.Ed. 1407: "Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are the considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer—especially where the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax.

"Congress recognized and gave sanction to this practice of federal equity courts by the Act of August 21, 1937, * * *. The earlier refusal of federal courts of equity to interfere with the collection of state taxes unless the threatened injury to the taxpayer is one for which the state courts afford no adequate remedy, and the confirmation of that practice by Congress, have an important bearing upon the appropriate use of the declaratory judgment procedure by the federal courts as a means of adjudicating the validity of state taxes."

And in Township of Hillsborough v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358, the Supreme Court reiterated its recognition of this long standing policy of the federal equity courts and said that in the Huffman case, it had held that the same policy should govern the federal courts in the exercise of their discretion in withholding relief under the declaratory

judgment statute. 326 U.S. pages 622–623, 66 S.Ct. page 448, 90 L.Ed. 358: "* * * Where the remedy at law is 'plain, adequate, and complete', it is the one which must be pursued even for the protection of any federal right. That practice of the federal equity courts was given further recognition and sanction by Congress in the Johnson Act * * *. It was against that background that we held in Great Lakes Dredge & Dock Co. v. Huffman, supra, that the policy which led federal courts of equity to refrain from enjoining the collection of allegedly unlawful state taxes should likewise govern the exercise of their discretion in withholding relief under the Declaratory Judgments Act."

In these decisions the Supreme Court makes it crystal clear that, with respect to suits challenging the validity of state taxes, it has been the object and purpose of the federal courts to avoid unwarranted interference with the collection of state taxes and that such purpose is controlling whether the suitor, in seeking relief, resorts to the declaratory judgment procedure or to the injunctive process, and recognizes the patent inconsistency that would result if such purpose could be circumvented by way of a declaration of rights in circumstances where injunctive relief would be withheld. And clearly this principle would control in such cases even if the Johnson Act had never been enacted.

It is true that in the Huffman case the Court was considering specifically the interference with the collection of state taxes and that in the instant case the tax involved is one imposed under the laws of Puerto Rico, and the question remains whether the principles set forth in that case is applicable to cases involving the imposition of a tax under territorial law. That question has been answered in the affirmative by the Court of Appeals for the First Circuit in Paul Smith Const. Co. v. Buscaglia, supra. In that case the Court of Appeals noted the applicability of the principle of the Huffman case to suits seeking to restrain the collection of insular taxes and said that it could be applied in such cases to affect a withholding of relief without reference to the Butler Act. 140

F.2d pages 901–902: "Under these circumstances, even without the express prohibition of the Butler Act, the District Court, on ordinary principles of equity jurisdiction, could properly have denied an injunction and left the taxpayer to pursue its statutory remedy as provided by insular law. If this proposition could be regarded as doubtful, the Butler Act removes any question as to the proper disposition of the present case."

It is conceded that in the Paul Smith case, and in the language above quoted, the Court refers only to injunctive relief, but in that case the relief sought was a declaration of rights with respect to an insular tax and the Court recognized the appropriateness of applying thereto, the principle set forth in the Huffman case. And in the Huffman case the decision goes further than is indicated by the language of the Court of Appeals, above quoted, for it was there held that when the taxpayer has an adequate remedy under state law, it is the duty of the courts to decline to make a declaration of rights with respect to state taxes. 319 U.S. page 300, 63 S.Ct. page 1074, 87 L.Ed. 1407: "The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937 (the Johnson Act), are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. With due regard for these considerations, *it is the court's duty to withhold such relief when,* as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes." (Emphasis supplied.)

It follows then, in view of the Paul Smith case, supra, that it is the duty of this court to withhold relief by way of a declaration of rights when under insular law the taxpayer may maintain an action to recover

an illegally exacted tax. And in the instant case it is abundantly clear that the taxpayers are afforded under insular law an adequate procedure to litigate the validity of any tax imposed upon them as a consequence of their being denied tax exemption by the defendants. Therefore, even if the Butler Act did not operate so as to deprive this court of jurisdiction of the instant case, the plaintiffs having an adequate remedy in the insular courts, this court would be required to withhold such relief in view of the principle set forth in the Huffman case.

Without considering the merits of plaintiffs' claim of right to tax exemption under the Tax Exemption Act, the motion of defendants is granted and the complaint is dismissed.