**EVERLASTING DEVELOPMENT CORP. et al. v. SOL LUIS DESCARTES et al.**

No. 4572.

United States Court of Appeals
First Circuit.

Nov. 2, 1951.

Rehearing Denied Nov. 30, 1951.

· William G. Grant, Atlanta, Ga., and Walter L. Newsom, Jr., San Juan, P. R. (Robert M. Hollings, Charleston, S. C., and Francisco Ponsa-Feliu, San Juan, P. R., on the brief), for appellants.

Abe Fortas, Sp. Asst. Atty. Gen. of Puerto Rico (Victor Gutierrez Franqui, Atty. Gen. of Puerto Rico, and Jose Trias-Monge, Sp. Asst. Atty. Gen. of Puerto Rico, and Arnold, Fortas & Porter, Washington, D. C., on the brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Puerto Rico dismissing a complaint asking for a declaratory judgment that the plaintiffs are entitled to tax exemption under a Puerto Rican statute. The district court dismissed the complaint under the view that the suit was in substance one to restrain the assessment and collection of insular taxes, and that such suit could not be entertained in the federal court in view of the prohibition of the Butler Act, 44 Stat. 1421, 48 U.S.C.A. § 872. For the opinion below see D.C., 95 F.Supp. 954.

The complaint was filed March 3, 1950. Joined as plaintiffs were Everlasting Development Corporation and Long Corporation, both organized and existing under the laws of Puerto Rico, and L. D. Long

individually (a citizen of South Carolina and during the times here involved a resident of Puerto Rico) as majority stockholder of the two corporate plaintiffs. The defendants named were seven individuals, the heads of the executive departments of the Government of Puerto Rico, in their capacity as members of the Executive Council of Puerto Rico, 46 Stat. 1168, 48 U.S.C.A. §§ 773, 775–777, 784, 784a.

There being no diversity of citizenship, jurisdiction of the complaint in the federal court purported to rest upon 28 U.S.C. § 1331. We are of opinion that the factual allegations of the complaint do not make out a case arising under the Constitution or laws of the United States, and that consequently the court below did not have jurisdiction of the subject matter. There are other difficulties with appellants' case, some of which we find it unnecessary to discuss at all, and others of which will be alluded to only briefly in passing.

Appellants claim that they have been denied a tax exemption rightfully theirs under Act No. 184 approved May 13, 1948, known as The Industrial Tax Exemption Act of Puerto Rico, Laws P.R. 1948, p. 482. We shall undertake to summarize its main provisions for a better understanding of the case.

The Act, as appears from its statement of motives, was designed to promote the industrial development of Puerto Rico by offering to persons who were willing to establish new industrial units on the island exemption from various insular and municipal taxes and excises for a limited period. The exemptions provided for, § 5, started at 100 per cent and tapered off to 25 per cent for the fiscal year 1961–1962, at the end of which year the exemption period would terminate.

In the statement of motives, the legislature listed 41 industries, denominated "designated industries", described as "industries established in Puerto Rico, which have good prospects for further develop-

ment" and which therefore deserved to enjoy the benefit of the tax exemption granted by the Act in order to encourage their expansion.

Section 1 of the Act contained certain definitions of terms to which we shall refer subsequently.

Under the heading "eligible industries", § 2 provided that there shall be eligible for tax exemption: "a. Any industrial unit having as its object the production on a commercial scale in Puerto Rico, subsequent to January 2, 1947, of any manufactured product not in production on a commercial scale in Puerto Rico on said date, and for which there were on such date in Puerto Rico no manufacturing facilities capable of the production of said manufactured product on a commercial scale."

b. Any new industrial unit of one of the so-called "designated industries" already established in Puerto Rico, having as its object the beginning of production on a commercial scale subsequent to May 12, 1947, which new industrial unit, in the judgment of the Executive Council, will be established "in good faith and with a permanent character", and which, in the judgment of the Executive Council, has or will have capacity to produce "a substantial share of the articles of commerce, additional to that produced in Puerto Rico annually, on an average, by all existing units of such designated industry".

Since the granting of tax exemption to such a new unit of a designated industry would result in a competitive disadvantage to the business units already established in the island and making the same product, it was further provided that in that event any already established industrial unit in one of the designated industries would also be eligible for tax exemption.[1]

Section 2 went on to provide that the Executive Council might, "in the exercise of a sound judgment," deny the tax exemption in any of the cases listed "when

---

1. The original phraseology of § 2 seemed a little obscure at this point, but we take it that the meaning was as summarized above and that the revised phraseology in the amendatory Act No. 243 of May 8, 1950, was intended to be of a clarifying nature.

in its judgment, the article of commerce produced or to be produced by the applicant, because of the use thereof or other factors, will be a substitute for, or a competitor with substantial advantage on account of the exemption, of similar articles of commerce produced by industries established in Puerto Rico". Notwithstanding this, the Executive Council might still grant the exemption "whenever in its judgment, the applicant eligible industry represents a substantial gain for the general economy of Puerto Rico by reason of the employment opportunities it may provide, the prospects for the development thereof in a higher scale in Puerto Rico, and the quality and efficiency in the use, or in the benefit to the community, of the article of commerce which the applicant eligible industry produces or will produce"; but the Executive Council may, in granting exemption to any industry under the aforesaid circumstances, "on petition of the interested party grant said exemption to such other existing industries manufacturing similar articles of commerce as in its judgment will sustain substantial prejudice because of the substitution or competition referred to in this paragraph."

Referring back to the definitions contained in § 1, the term "manufactured products" was defined to mean "not only all products transformed from raw materials into articles of commerce finished by hand or machinery, but also any product the value of which, in the judgment of the Executive Council, is substantially increased by processing, assembling, or extracting." The term "industrial unit" meant "Any plant, factory, machine or machine ensemble having a capacity for performing the major functions involved in the production of a manufactured product on a commercial scale." The term "production on a commercial scale" meant "Production for sale on the market in the normal course of business in quantities and at a price which justifies the operation of an industrial unit as a going business."

Section 3 provided that any person who has established or proposes to establish in Puerto Rico "an eligible industry" may apply to the Executive Council for tax exemption under the Act.

Section 4 provided that after it is proved "to the satisfaction of the Executive Council, that an applicant has established or will establish in Puerto Rico an eligible industry," the Council shall declare the industry tax-exempt and shall grant the applicant exemption from the enumerated taxes.

Section 9 provided that before deciding on any application for tax exemption "the Executive Council shall first consider the reports on each application which shall be submitted to the said Council by the Puerto Rico Industrial Development Company, and such other Insular agencies as in the judgment of the Council should make their report on such application."

Section 11 provided that "A grant of tax exemption approved by the Executive Council shall not be effective until the same has been approved by the Governor of Puerto Rico, but when so approved the grant shall be effective on and after the first day of the month following that in which the application was filed. The Treasurer of Puerto Rico shall return to the applicant whatever sum the said applicant may have paid for taxes appertaining to any period covered by the exemption."

Section 14 contained provisions authorizing the Executive Council, after hearing and with the approval of the Governor, to revoke any tax exemption previously granted where the grantee failed to complete, within the time fixed by the Council, the construction of the necessary installations or where the grantee discontinued production on a commercial scale for more than thirty days without authorization from the Executive Council.

Section 16 provided: "All resolutions and findings of the Executive Council and of the Governor of Puerto Rico under the provisions of this Act, shall be final, and no judicial or administrative proceeding shall lie against the same."

The complaint alleges that the plaintiff corporations, on June 30, 1948, filed with the Executive Council their joint applica-

tion for tax exemption under Act No. 184, and thereafter complied with all other requirements of law and of the applicable rules and regulations; that, notwithstanding the favorable finding and report of the special master who had taken testimony on the application, and a favorable opinion of the Attorney General rendered in February, 1949, the Executive Council delayed a decision on the matter for several months; that meanwhile the Attorney General submitted a new and adverse opinion upon the application, "which opinion was and is erroneous and which fact was and is well known to the defendants"; that solely on the basis of this adverse opinion by the Attorney General, the Executive Council on November 23, 1949, denied the application for tax exemption.

It is not easy to tell from the allegations of the complaint just what the theory was upon which the plaintiff corporations applied for tax exemption. They seem to have claimed exemption under the provisions both of § 2a and § 2b of Act No. 184, though the two categories are mutually exclusive, one embracing an industrial unit designed to produce on a commercial scale a manufactured product not already being produced commercially in Puerto Rico, and the other embracing a new unit of one of the so-called "designated industries" already established and in operation on the island.

Plaintiffs are engaged in housing development on a large scale, in the course of which low-cost dwellings are erected by mass production methods, and sold commercially.

To bring themselves within § 2a of the Act, plaintiffs allege that they established in Puerto Rico subsequent to January 2, 1947, "a plant, factory, machine or machine ensemble" for the erection and sale on a commercial scale "of mass produced low-cost housing"; that on that date there were no manufacturing facilities in Puerto Rico capable of the production of houses for sale on the market in the normal course of business in quantities and at a price which justified the operation of an industrial unit performing the major functions involved in the mass production of low-cost housing as a going business. Whether a house so erected is a "manufactured product" or article of commerce within the meaning of the Act, so as to entitle plaintiffs to apply for tax exemption under § 2a, is a matter of statutory interpretation, as to which it can hardly be said that the language of the Act is crystal-clear.

To bring themselves within § 2b of Act No. 184, plaintiffs allege that subsequent to May 12, 1947, they established a new plant, factory, machine or machine ensemble for the purpose of producing low-cost housing in large quantities for the Puerto Rican masses; that the operation of this new industrial unit is permanent in character; that it has produced and has the capacity to produce a substantial share of homes additional to that produced in Puerto Rico annually on the average by all existing units of the local housing industry. Under the requirements of § 2b, they must have established a new industrial unit in one of the so-called "designated industries" listed under the statement of motives in Act No. 184; the only one of these "designated industries" which it might plausibly be suggested fits the plaintiffs' case, and which apparently the plaintiffs rely upon, is the first one listed, described as follows: "1. Articles produced by assembly plants. By assembly plants shall be understood those factories engaged in the production of articles of commerce, excluding furniture, by the joining of parts, provided that the cost of the work of assembling the article represents such a substantial part of the total cost of the article that, in the judgment of the Executive Council, the industry deserves the exemption herein provided for."

Again, whether a house is an article produced by an assembly plant within the meaning of the Act is a question of statutory interpretation as to which, it is fair to say, an affirmative answer is not obviously indicated.

The complaint goes on to allege that since the passage of Act No. 184 industrial units having as their object the production on a commercial scale "of certain

manufactured products" have been granted tax exemption under § 2a of the Act; and new industrial units of so-called "designated industries" have been granted tax exemption under § 2b of the Act; that the defendants, having granted tax exemptions to all other industrial units qualifying therefor under the Act, "have arbitrarily and capriciously determined and agreed to deprive and have deprived these plaintiffs of the tax exemption to which they are entitled under the Tax Exemption Act as aforesaid"; that the defendants, "with the intent to discriminate against these plaintiffs", in denying them the tax exemption to which they are entitled, have violated the Fifth Amendment to the Constitution of the United States and § 2 of the Organic Act, 39 Stat. 951, 48 U.S.C.A. § 737, in that the plaintiffs have been denied the equal protection of the laws, deprived of their property without due process of law, and subjected to unequal and discriminatory taxation.

The complaint prays that the court enter a judgment declaring "That plaintiffs are eligible for and entitled to tax exemption under the provisions of Act 184 of May 13, 1948," and that the action of the Executive Council in denying tax exemption to the plaintiffs constitutes a denial of equal protection of the laws, deprives the plaintiffs of their property without due process of law, and subjects the plaintiffs to unequal and discriminatory taxation.

■ At the oral argument, counsel for appellants frankly conceded that they could not expect the full relief sought, namely, a judicial declaration that plaintiffs are entitled to tax exemption under Act No. 184. Whether tax exemption is to be accorded to a particular applicant is not merely a question of law to be determined by a reading of and interpretation of statutory language. It involves, moreover, the weighing of complex economic factors, a forecast or prophecy of the extent to which an over-all gain in the Puerto Rican economy, in the direction of the statutory objectives, is to be anticipated from the launching of a proposed new industrial unit with the advantage of tax exemption. In the broad sense, the exercise of such a judgment is political in nature rather than judicial. It is a judgment which Act No. 184 clearly confided, not to the courts, but to the administrative determination of the Executive Council and, ultimately, to the executive determination of the Governor. See Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp., 1948, 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568.

In their brief, appellants have put their case on a more modest contention. They say the controversy here "relates essentially to the construction of a statute"; that they were entitled to ask the court below for a declaratory judgment so limited in scope as merely to preclude the Executive Council from denying the application for tax exemption upon an erroneous conclusion of law contained in the adverse opinion by the Attorney General, leaving the Council free, and under the duty, to apply the proper criteria, in the exercise of the judgment and discretion entrusted to it, in determining whether, on the facts, the applicants should be granted a tax exemption. The adverse opinion of the Attorney General, upon which the Council acted, is not included in the record; so we do not know the specific ground upon which the application was denied. But if, as applicants contend, the denial was upon an erroneous interpretation of Act No. 184, we infer that the denial was upon the ground that the particular business established by these plaintiffs in Puerto Rico was not one of the kinds contemplated by the legislature as a possible subject of tax exemption in the administration of Act No. 184. Whether such ground was well taken or not may present a difficult question of statutory construction as to which, as we have suggested above, the answer is not obvious from a mere reading of the language.

■ Of course, in so far as the controversy relates to the construction of an insular tax exemption statute, that is not a federal question. But it may be conceded that a substantial constitutional question of equal protection of the laws may arise out of the discriminatory administration of a statute fair on its face. See Iowa-Des Moines National Bank v. Bennett, 1931, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265.

And so the plaintiffs here, in order to bring their case within the jurisdiction of the court below under 28 U.S.C. § 1331, have alleged in the complaint that the action of the Council deprived the plaintiffs of the equal protection of the laws. However, something more than the mere pleading of such an ultimate conclusion of law is necessary to bring the complaint within 28 U.S.C. § 1331.

It is true the complaint alleges that the defendants intended to discriminate against these plaintiffs when the Council denied their application after having granted tax exemption to other applicants entitled thereto. This is no more than an allegation that the defendants, having granted tax exemption to other applicants, intended to treat these plaintiffs differently. But it is not a denial of the equal protection of the laws in a constitutional sense where the administrative body, upon an erroneous interpretation of a local statute, denies a tax exemption to one person after having lawfully and properly granted tax exemption to other persons differently situated. There must be a purposeful discrimination against one person and in favor of another person in like case, with no rational basis for a differentiation between the two. The complaint in the case at bar, however, carefully refrains from alleging that tax exemption has been granted to other persons in like case with the plaintiffs, engaged in the mass production of low-cost housing.

We are clear that the factual allegations of the complaint fall far short of setting forth a substantial federal claim within the jurisdiction of the court below under 28 U.S.C. § 1331. Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497.

There is another difficulty with plaintiffs' case, which arose after their complaint below was filed and before the entry of the judgment by the district court on March 6, 1951, dismissing the complaint. Act No. 29, approved September 5, 1950, Laws P.R., 5th to 12th Spec.Sess. 1950–1951, p. 216, amended the Industrial Tax Exemption Act so as to eliminate entirely the functions of the Executive Council in the administration of the Act and to vest in the Governor the whole administrative disposition of applications for tax exemption. Thereafter, there ceased to be any controversy, in a legal sense, between the plaintiffs and the individual defendants named in the complaint. Whatever might be the terms of an ensuing declaratory judgment, the members of the Council would have only an academic interest in it; they would no longer have any official or personal function to perform in consequence of it. As to them, the case had become moot. See Snyder v. Buck, 1950, 340 U.S. 15, 71 S.Ct. 93, 95 L.Ed. 15. The Governor was not named a party-defendant in the complaint, nor was any effort made to join him as the successor to the functions formerly performed by the Executive Council. See Rule 25(d), Federal Rules of Civil Procedure, 28 U.S.C. Any declaratory judgment by the court below on the subject matter, so far as concerns the Governor, would have been a mere advisory opinion, which the Governor would have been legally free to disregard. Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp., 1948, 333 U.S. 103, 113–114, 68 S.Ct. 431, 92 L.Ed. 568.

The judgment of the District Court is affirmed.