OPINION. Johnson, Judge: Petitioners, citing J. H. Sessions & Son, 6 T. C. 1236, contend that the telegraphic notice of November 29, 1943, and the letter of November 29,1943, addressed to Ebco did not constitute commencement of renegotiation of Ebco for the fiscal year ended November 30, 1942, within the meaning of section 403 (c) (6) of the Renegotiation Act of 1942, as amended.[1] Respondent contends to the contrary. In the Sessions case the letter upon which the Government relied as commencing renegotiation contained, in part, the following: In order that your company and its affiliates, if any, may be assigned for renegotiation to the proper Department or Service with the minimum of inconvenience to all concerned, we will be glad to receive any information which you may care to submit bearing upon the matter. * * * This Court held that the letter did not commence renegotiation within the meaning of section 403 (c) (6). We said, at p. 1244: The letter of March 3, 1943, upon which the respondent relies, was not sent for the purpose of commencing renegotiation proceedings. It was not sent for the purpose of bringing about an initial conference or to obtain information to be used as the basis for the determination of excessive profits. * * * It sought some very limited information for assignment purposes only. * * * The implication is plain from these words that had the letter been sent for the purpose of bringing about an initial conference, the letter would have constituted a commencement of renegotiation proceedings. That precise condition was met in the case here before us. The telegram of November 29, 1943, from the United States Maritime Commission to petitioners (the words of which were repeated in the letter of November 29,1943) says: “initial Renegotiation conference set for tues nov 30.” It is difficult to see how it could have used language more unequivocal than that. Petitioners argue that the telegram directed Ebco to be present in Chicago at a time which could not be within the limitations of time provided in the notice. The notice was short, but the fact that petitioners were given an opportunity, of which they did not avail themselves, to make a request for a continuance of the proposed conference answers any argument that the notice was too short. Petitioners further argue that the telegram could not have constituted a commencement of renegotiation for the fiscal year ended November 30, 1942, because it did not state that that was the year with respect to which renegotiation was contemplated. However, such a statement was unnecessary. In Spray Cotton Mills, 9 T. C. 824, a letter from the renegotiating agency to the Spray Cotton Mills was held by this Court to have commenced renegotiation under section 403 (c) (6), though that letter likewise did not state what fiscal year was involved. In the instant case the only year which could have been subject to renegotiation at the time the notice was sent was the 1942 fiscal year. Under section 403 (c) (6) of the Renegotiation Act of 1942,[2] as amended, the fiscal year ending November 30, 1941, could not have been subject to renegotiation ■ and petitioners so admit on brief. The fiscal year ended November 30, 1943, had not yet ended when the notice was sent on November 29, 1943, and so renegotiation as to that year could not have been commenced by the notice. Petitioners also contend that the telegram could not have commenced renegotiation because it called for the production of balance sheets and income statements, which, according to petitioners, would have been an inadequate basis for determining the amount, if any, of excessive profits arising from renegotiable business. In this connection the following excerpt from Spray Cotton Mills, supra, setting forth the administrative practice in respect to section 403 (c) (6), is pertinent: In a “Joint Statement by the War, Navy and Treasury Departments and the Maritime Commission of Purposes, Principles, Policies, and Interpretations” [1] relative to the Renegotiation Acts, which was promulgated on March 31, 1943, it was stated with regard to section 403 (c) (6) that: The Departments interpret this provision to mean that renegotiation commences on the specific date set by the Department conducting renegotiation for the initial renegotiation conference unless otherwise agreed by the contractor. Shortly after publication of the “Joint Statement” containing the above quoted interpretation, and on May 27, 1943, the executive departments, concluding that they had erroneously construed section 403 (c) (6), and according to their custom, amended that interpretation, the amendment reading as follows: The Departments interpret this provision to mean that renegotiation commences at the time of the institution of proceedings to obtain the information which is to be used as a basis for the determination of excessive profits. Assuming, then, as petitioners contend, that this latter construction was in effect at the time the telegraphic notice was sent on November 29, 1943, it still does not follow that that notice was insufficient to commence renegotiation. The amendment of May 27, 1943, says, to repeat, that “renegotiation commences at the time of the institution of proceedings to obtain the information which is to be used as a basis for the determination of excessive profits.” It does not say that all the information must be obtained at the initial renegotiation conference. There has to be a starting point and the contractor’s balance sheets and income statements are basic financial data for the determination of excessive profits. It would be placing an impossible burden on the agencies charged with the administration of the Renegotiation Act to say that they must, at their peril, designate every record of a contractor that will be needed to determine excessive profits and request that it be brought to the initial renegotiation conference, or else renegotiation will be deemed not to have commenced. We accordingly hold that renegotiation for petitioners’ fiscal year ended November 30, 1942, was commenced on November 29, 1943, within the time prescribed by section 403 (c) (6) of the Eenegotiation Act of 1942, as amended. Decision will be entered for the respondent. Renegotiation Act of 1942, sec. 403 (c) (6) : No renegotiation of the contract price pursuant to any provision therefor, or otherwise, shall be commenced by the Secretary more than one year after the close of the fiscal year of the contractor or subcontractor within which completion or termination of the contract or subcontract, as determined by the Secretary, occurs. SBC. 403. (c) (6) This subsection (c). shall be applicable to all contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made, * * * unless (1) final payment pursuant to such contract or subcontract was made prior to April 28, 1942, * * * 1 In a preface to the “Interpretations,” It was stated that the construction of the statute set forth in the statement represented the present opinion of the departments ; that the constructions were subject to revision from time to time as might- appear desirable as a result of the operation of the various boards under the statute; and that the constructions were subject to change without notice.