**MONOLITH PORTLAND MIDWEST COMPANY, a corporation, Appellant,**

v.

**RECONSTRUCTION FINANCE CORPORATION, a corporation, Appellee.**

No. 14841.

United States Court of Appeals Ninth Circuit.

Jan. 7, 1957.

Rehearing Denied March 30, 1957.

Joseph T. Enright, Norman Elliott, Los Angeles, Cal., for appellant.

Allan E. Charles, Frank L. Adamson, Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., Earl L. Martin, Lyon & Lyon, Los Angeles, Cal., for appellee.

Before STEPHENS, LEMMON, and HAMLEY, Circuit Judges.

LEMMON, Circuit Judge.

Attorneys often give high rhetorical praise to the function of a jury under the common law system—and then, when it suits their clients' purposes, in order to defeat an adversary's demand for a jury trial they invoke "Governmental immunity", "lack of statutory right", "inappropriateness", etc.

In the instant case, we do not propose to lend ourselves to any such ambivaluation of that potent instrument of Anglo-American law.

Nor will the fact that we are urged to do so by counsel for a Government-owned corporation cause us to overlook the historic and traditional purposes of a jury trial.

1. *Statement of the Case*

Arising out of a war contractor's claim for monetary compensation for a Government contract terminated by the appellee, the present controversy has been before State or Federal courts for more than a decade.

A full statement of the case and of the facts, with the appropriate Federal citations, is to be found in the opinion of the Court below, D.C., 128 F.Supp. 824, 830–837, which preceded the judgment from which the present appeal was taken. Since this protracted litigation already has elicited three reported opinions from the same District Judge, the Honorable James M. Carter, the opinion just mentioned will be referred to hereinafter as "No. 3". The two earlier District Court opinions will be designated by Federal Supplement citations.

On August 28, 1951, the appellant— the plaintiff below—requested a jury trial. On February 20, 1952, the District Judge granted the appellee's motion to strike that demand. The Court's action is specified as error. Our present decision is confined almost entirely to that question alone.

2. *The Appellant's Request for a Jury Trial Should Have Been Granted*

Section 113(b) (1) and (2) of 41 U.S. C.A., which is part of the Contract Settlement Act of 1944, provides for two ways in which a war contractor who is "aggrieved by the findings of a contracting agency [here the RFC] * * * may, at his election" either appeal to the "Appeal Board" provided for in Subdivision (d) of the same section, *or* "bring suit against the United States" in the Court of Claims or in a United States District Court in accordance with § 1346 of Title 28. Section 2402 of 28 U.S.C.A. specifies that "Any action against the United States under section 1346 of this title shall be tried by the court *without a jury*". [Emphasis supplied.]

But Section 113(b) (2) specifies an exception to the non-jury rule:

"* * * *except that,* if the contracting agency is the *Reconstruction Finance Corporation* [the *appellee herein*], or any corporation organized pursuant to the *Reconstruction Finance Corporation* Act, or any corporation owned or controlled by the United States, the suit shall be brought against such corporation in any court of competent jurisdiction *in accordance with existing law.*" [Emphasis supplied.]

The statutory distinction made between suits against "the United States" and those against "any corporation owned or controlled by the United States [including the appellee herein]", is significant. The only applicable difference between § 1346 and "existing law" is that, under Section 2402 of 28 U.S.C.A. a suit *against the United States* under § 1346 must be tried without a jury, while under "existing law" there is no such restriction.

In other words, the only rational explanation for the excepting clause in § 113(b) (2) is that, while suits *against the United States* must be tried without a jury, suits against Government *corporations* are not so restricted, but are to be tried "in accordance with existing law".

We advance next, therefore, to a consideration of the "existing law" governing suits for "monetary compensation". See 128 F.Supp. at page 830.

Ordinarily, "the usual procedure of a District Court in actions at law for money compensation" is one in which "the right to a jury is an incident". United States v. Pfitsch, 1921, 256 U.S. 547, 550, 552, 41 S.Ct. 569, 570, 65 L.Ed. 1084.

"* * * the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." Keifer & Keifer v. R. F. C., 1939, 306 U.S. 381, 388, 59 S.Ct. 516, 517, 83 L.Ed. 784.

While the appellee "acts as a governmental agency in performing its functions * * *, still its transactions are akin to those of private enterprises and the mere fact that it is an agency of the government does not extend to it the

immunity of the sovereign." R. F. C. v. J. G. Menihan Corp., 1941, 312 U.S. 81, 83, 61 S.Ct. 485, 486, 85 L.Ed. 595.

"In spawning these [governmental] corporations during the past two decades, Congress has uniformly included amenability to law. Congress has provided for not less than forty of such corporations discharging governmental functions, *and without exception the authority to-sue-and-be-sued was included.* Such a firm practice is partly an indication of the present climate of opinion which has brought governmental immunity from suit into disfavor, partly it reveals a definite attitude on the part of Congress which should be given hospitable scope." [Emphasis supplied.] Keifer & Keifer v. R. F. C., supra, 306 U.S. at pages 390–391, 59 S.Ct. at page 518.

"But even the immunity enjoyed by the United States as territorial sovereign is a legal doctrine which has not been favored by the test of time. It has increasingly been found to be in conflict with the growing subjection of governmental action to the moral judgment." National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 359, 75 S.Ct. 423, 426, 99 L.Ed. 389.

The first of the two main grounds upon which the decision of the District Court on this jury-trial point is based is that "the section [113(b)] has been referred to as a method of appealing from the determination of the contracting agency", and that therefore "in the absence of an express statutory grant, no jury trial is available." Monolith Portland Midwest Co. v. R. F. C., D.C.Cal., 1952, 102 F.Supp. 951, 953. As we have seen, however, the *appeal* subparagraph (1) of § 113(b) is separate and distinct from subparagraph (2), which deals in part with suits brought against RFC "in any court of competent jurisdiction in accordance with existing law".

The second ground for the District Court's holding that the appellant was not entitled to a jury was that an "analogous situation" is found in suits for "condemnation"; that in such actions, "there is no constitutional right to trial by jury * * * in the absence of a specific statutory grant." 102 F.Supp. at pages 953–954, supra. The lower court's reference to condemnation suits is unfortunate; for while a jury trial is not required in condemnation suits as a *constitutional* matter, in practice juries have often been used in such actions.

In Louisville & Nashville R. Co. v. Western Union Tel. Co., 6 Cir., 1918, 249 F. 385, 402, a condemnation case, the Court said:

"Finding the amount of compensation is another term for assessing damages, and this always has been a recognized function of a jury."

In that case, certiorari was denied by the Supreme Court, 1918, 248 U.S. 576–577, 39 S.Ct. 18, 63 L.Ed. 428, 429.

Similarly, in Filbin Corporation v. United States, D.C.S.C.1920, 266 F. 911, 916, the Court used the following language:

"It would seem absurd to say that, if the United States sued a man on a contract or for a tort, in which it sought to make him pay more than the sum of $20, it could not deprive him of the right to have the issue tried by a jury, and then to say that, if the United States by virtue of any act of Congress desires to wrest from a man, under either requisition or condemnation, property claimed to be worth $1,000,000, * * * on that question, as to the quantum to be paid him, he is not entitled to a trial by jury!"

In United States v. Theimer, 10 Cir., 1952, 199 F.2d 501, 503 the Court said:

"It had long been thought that there should be uniformity of procedure in Federal condemnation cases. Prolonged study had been given to the subject by the Advisory Committee of the Supreme Court. Different rules had been proposed, studied, revised and amended over a number of years, all of which finally culminated in Rule 71A [of the

Rules of Civil Procedure, 28 U.S.C. A.] as it now exists. * * * Throughout all these studies runs the thought *that litigants should have the right of trial by jury of the issue of value except only in extraordinary and exceptional cases and that the commissioner provision of the Rule should be employed only in exceptional cases where because of peculiar circumstances trial by jury was inadvisable.*

* * * * * *

"We, therefore, conclude that the parties to a condemnation proceeding are ordinarily entitled to a jury under Rule 71A(h) as a matter of right *and that where demand is made for the same the judge must grant a jury trial,* unless under the facts as they appear in the case because of the character, location, or quantity of the property to be condemned, or for other reasons revealed by the facts of the case, the interest of justice warrants the submission of question of value and compensation to a commission." [Emphasis supplied.]

And in United States v. Waymire, 10 Cir., 1953, 202 F.2d 550, 552, Judge Bratton said:

"Under such provision in the rule [71A(h)], any party to a condemnation proceeding is ordinarily entitled as a matter of right to trial by jury of the issue of just compensation for the property taken if demand therefor is made within the time fixed in the rule."[1]

RFC says that "It is significant that we have been unable to find any case in which the Reconstruction Finance Corporation was subject to a trial by jury." RFC didn't look hard enough. There is such a case decided by the Supreme Court of a State lying within this Circuit. In R. F. C. v. Lyon, 1934, 179 Wash. 673, 38 P.2d 1029, it is stated that "Trial of the cause to a jury resulted in a verdict in favor of the defendant [Ly-

on]." The case was affirmed, the Court saying:

"All questions of fact are foreclosed by the jury's verdict in favor of respondent, * * *."

Finally, the appellee asserts that "Even if there were a right to a jury, it was waived by Monolith." It is pointed out that Rule 38(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. "provides that the demand for a jury trial must be served upon the other party not later than ten days after the service of the last pleading directed to an issue". The appellee's Answer and Counterclaim were filed on June 18, 1951. The appellant filed its Answer to the Counterclaim and its Request for Jury Trial both on the same day—August 28, 1951.

The appellee contends that the appellant's answer to the Counterclaim cannot be considered as being "directed to the issue involved in the complaint", and that therefore the request for a jury trial was filed too late. The appellant, however, correctly points out that the first paragraph of each cause of action of RFC's Counterclaim incorporates "each and every admission, denial and allegation contained in [FRC's] answer" to "[Monolith's] first, second and third causes of action as though fully set forth herein". Furthermore, it is pointed out that though Monolith had generally alleged exhaustion of its administrative remedy, Monolith did not plead the RFC Findings in its Complaint. RFC, however, specifically incorporated such Findings in its Answer and Counterclaim.

■ Therefore the "last pleading directed to issue" of Monolith's Complaint was Monolith's "Answer to Counterclaim" and its Request for Jury Trial filed concurrently therewith came within the requirements of Rule 38(b).

■ Accordingly, we hold that the Court below should have granted the appellant's request for a jury trial.

3. *The Remaining Issues*

---

1. See also United States v. 1146.32 Acres of Land, D.C.Tex.1955, 132 F.Supp. 681, 682.

The complaint prays judgment for $247,134.51 for compensation for services rendered and for reimbursement for actual expenditures made by the appellant pursuant to certain agreements; for $130,876.55 "for reimbursement for actual disbursements and expenditures incurred in connection with the termination of outstanding purchase orders and contracts, completing property records," etc.; and for $173,131.06 "for disbursements and expenditures for the protection, maintenance and management of said plant," etc. This makes a total of $551,142.12.

In its "Final Judgment", the District Court decreed that the appellant "is entitled to judgment on its claims in the sum of $109,322.49, with interest at 2½% per annum from April 10, 1950, in the sum of $13,206.60, for a total of $122,529.09"; and that the appellee "is entitled to judgment on its injunction bond counterclaim in the sum of $151,274.96, with interest at 2% per annum from April 10, 1950, in the sum of $14,616.00, for a total of $165,890.96"; that "these sums be and are offset," and that appellant "take nothing in this action, and [appellee] recover of [appellant] the sum of $43,361.87."

In addition, the complaint asks for $600,000 for the cost of the completion of the alumina plant, and "readying said plant for operation"; for the additional sum of $1,500,000 for the cost of managing and operating that plant during an experimental test period "to determine the feasibility of obtaining large scale production of alumina by use of [appellant's] process"; and, finally, "in the alternative and in the event that * * * [appellant] is not entitled to the relief prayed for * * *, [appellant] have judgment against the [appellee] in the sum of $7,500,000 as * * * general damages," etc.

■ We agree with the Court below that these last three claims are not proper under the Contract Settlement Act, *supra*, but sound in specific performance or breach of contract. No. 3, 128 F. Supp. at page 837.

In these respects, as well as on the questions of the termination of the contracts, "fair compensation," etc., we hold that the District Court correctly narrowed the factual issues.

### 4. Conclusion

We hold that Congress, in providing in 41 U.S.C.A. § 113(b) (2), that suits against the appellee, *inter alios*, should be tried "in accordance with existing law", intended that such suits should be tried by jury. The fact that the appellee is specifically mentioned in an *excepting* clause following a general provision for *non*-jury suits against the United States in accordance with §§ 1346 and 2402 of 28 U.S.C.A., confirms this view.

We also hold that the Court below correctly narrowed the factual issues.

Accordingly, the judgment is vacated and the case is remanded to the District Court with instructions to grant a jury trial.