**MONOLITH PORTLAND MIDWEST COMPANY, a corporation, Appellant,**

v.

**RECONSTRUCTION FINANCE CORPORATION, a corporation, Appellee.**

No. 16535.

United States Court of Appeals
Ninth Circuit.

July 27, 1960.

Rehearing Denied Aug. 30, 1960.

Enright, Elliott & Betz, Joseph T. Enright, Norman Elliott, Los Angeles, Cal., for appellant.

Lillick, Geary, Wheat, Adams & Charles, Allan E. Charles, Frank L. Adamson, San Francisco, Cal., J. H. Macomber, Jr., Gen. Counsel, Max Hersh, Gen. Service Administration, Washington, D. C., for Franklin G. Floete, as Administrator of General Services.

Before STEPHENS, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

Monolith Portland Midwest Company instituted this suit against Reconstruction Finance Corporation on June 16, 1950. The purpose of the suit is to recover damages because of the termination by R.F.C. of a war contract which had been entered into by Monolith and Defense Plant Corporation, then a subsidiary of R.F.C.[1] On a previous appeal we vacated a judgment entered in favor of R.F.C. and remanded with instructions to grant a jury trial.[2]

The mandate of this court following the previous appeal was filed in the district court on November 18, 1957. On January 19, 1959, before the case had come on for a jury trial, the Administrator of General Services moved to dismiss the action. This motion was made on the ground that the action had abated by reason of the failure to substitute the

1. The contract was entered into on June 28, 1943. Defense Plant Corporation was thereafter succeeded by R.F.C. The contract was terminated by R.F.C. on September 10, 1946, pursuant to the War Mobilization and Reconversion Act of 1944, 58 Stat. 785, 50 U.S.C.A.Appendix, §§ 1651–1678. The present action was brought pursuant to § 13(b)(2) of the Contract Settlement Act of 1944, 58 Stat. 649, 661, 41 U.S.C.A. § 113(b).

2. Monolith Portland Midwest Co. v. Reconstruction Finance Corporation, D.C.,

128 F.Supp. 824; 9 Cir., 240 F.2d 444, certiorari denied 1957, 354 U.S. 921, 77 S.Ct. 1379, 1 L.Ed.2d 1435. The new trial, however, was limited to Monolith's claim for "reimbursables," this court sustaining the district court judgment in so far as it rejected Monolith's other claims. Prior litigation involving the same claim has also been before this court. Monolith Portland Midwest Co. v. Reconstruction Finance Corporation, 9 Cir., 178 F.2d 854.

Administrator of General Services in place of R.F.C. within one year following the effective date of Reorganization Plan No. 1 of 1957.[3] On March 2, 1959, Monolith countered with a motion to substitute the Administrator as defendant in place of R.F.C.

The district court granted R.F.C.'s motion and denied that of Monolith. Findings of fact, conclusions of law and a judgment dismissing the action were thereupon entered.[4] Monolith appeals.

The single question presented here is whether the action abated by reason of the failure to substitute the Administrator in place of R.F.C. within one year following the effective date of Reorganization Plan No. 1 of 1957.

R.F.C. came into existence in 1932 with the enactment of the Reconstruction Finance Corporation Act, approved January 22, 1932. Public Law 2—72d Cong., 47 Stat. 5–12, 15 U.S.C.A. § 601 et seq. Succession of the corporation was originally established at ten years, but the act was amended from time to time to extend its succession. Beginning in the late 1940's the act was also amended several times to make provision for the liquidation of the corporation's assets and the winding up of its affairs.[5]

The original act as thus amended to June 29, 1954, contained certain provisions pertinent to our present inquiry, as set out in the margin.[6] In addition the Reconstruction Finance Corporation Liquidation Act, as amended to June 29, 1954, contained certain provisions relative to the abatement of actions by or against R.F.C. and the making of a report to Congress, as also quoted in the margin.[7]

---

3. Reorganization Plan No. 1 of 1957 is set out in full in 22 F.R. 4633, 71 Stat. 647, and 15 U.S.C.A., 1959 Pocket Part § 601, p. 29.

4. The effect of the judgment is not only to preclude Monolith from seeking a larger award than the $122,529.09 for "reimbursables" allowed at the first trial, which award has been set aside by the judgment of dismissal, but also to require R.F.C. to forego the net award in its favor in the sum of $43,361.87, as determined at the first trial, this net award having resulted from the deduction of Monolith's award from a gross award of $165,890.96 made to R.F.C. on its counterclaim.

5. See Act of June 30, 1947, Title I § 1, Title II § 206(a), 61 Stat. 202, 208; Act of May 25, 1948, c. 334, § 3, 62 Stat. 262, 15 U.S.C.A. § 603; Reorganization Plan No. 1 of 1951, 16 F.R. 3690, 65 Stat. 773, 15 U.S.C.A. § 601, 1959 Supp.; Reconstruction Finance Corporation Liquidation Act, approved July 30, 1953, 67 Stat. 230–231, §§ 102, 105, 106; and Reconstruction Finance Corporation Act of 1954, 68 Stat. 320, § 2.

6. Section 3(a), 15 U.S.C.A. § 603(a):
"The corporation shall have succession until it is dissolved pursuant to the provisions of section 10 (15 U.S.C.A. § 609) of this Act. * * *"
Section 10, 15 U.S.C.A. § 609:
"If by the close of business on June 30, 1954, its board of directors shall not have completed the liquidation of its assets and the winding up of its affairs, the duty of completing such liquidation and winding up of its affairs shall be transferred to the Secretary of the Treasury, who for such purpose shall succeed to all the powers and duties of the board of directors under this chapter. In such event he may assign to any officer or officers of the United States in the Treasury Department the exercise and performance, under his general supervision and direction, of any such powers and duties. When the Secretary of the Treasury shall find that such liquidation will no longer be advantageous to the United States and that all of the Corporation's legal obligations have been provided for, he shall retire any capital stock then outstanding, pay into the Treasury as miscellaneous receipts the unused balance of the moneys belonging to the Corporation, and make a final report to Congress. Thereupon the Corporation shall be deemed to be dissolved."

7. "Sec. 105. No suit, action, or other proceeding lawfully commenced by or against the Reconstruction Finance Corporation shall abate by reason of the dissolution of the Corporation; but the court may, on motion or supplemental petition filed at any time within twelve months after the date of such dissolution and showing a necessity for a survival of such suit, action, or other proceeding to obtain a settlement of the questions involved, allow the same to be maintained

Three years later, on June 30, 1957, Reorganization Plan No. 1 of 1957 relating to R.F.C. became effective. Under section 6 of this plan, quoted below, R.F.C. was "abolished." [8] Neither this plan nor any legislation made any express amendment of sections 105 and 106 of the Reconstruction Finance Corporation Liquidation Act as it existed on June 29, 1954, and as quoted in footnote 7.

The judgment dismissing the action as abated is based on the view that the abolishment of R.F.C. on June 30, 1957, as accomplished by section 6 of Reorganization Plan No. 1 of 1957, amounted to a "dissolution" of R.F.C. within the meaning of section 105 of the Reconstruction Finance Corporation Liquidation Act as amended to June 29, 1954. If this is true, then under the terms of section 105 this action would be abated unless Monolith moved to substitute the Administrator in place of R.F.C. within twelve months of June 30, 1957. The motion was not made within this twelve-month period, but was made on March 2, 1959, after the motion to dismiss this action had been filed.

Appellant contends, however, that the abolition of R.F.C. by virtue of section 6 of Reorganization Plan No. 1 of 1957

was not the "dissolution" referred to in section 105 of the Reconstruction Finance Corporation Liquidation Act as amended to June 29, 1954. Hence, it is argued, such abolishment did not bring into play the requirement of section 105 that in order to avoid abatement of a pending action against R.F.C. a motion to substitute parties must be made within twelve months after dissolution of R.F.C. It is further urged that until there has been a dissolution of the kind referred to in section 105 there is no possibility of abatement and therefore no occasion to utilize the procedure prescribed in that section for avoiding abatement.

In evaluating these conflicting points of view we start with the basic premise that in the absence of statute an action by or against a corporation abates when the corporation goes out of existence.[9] It follows that if R.F.C. had gone out of existence between June 16, 1950, when this action was begun, and July 30, 1953, when the Reconstruction Finance Corporation Liquidation Act of that year was passed, the action would have immediately abated. This is true because until this 1953 statute was enacted there was no statutory procedure whereby abatement could have been avoided.[10] But R.F.C.

by or against the officer or agency of the Government performing the functions with respect to which any such suit, action, or other proceeding was commenced."

"Sec. 106. (a) Promptly after June 30, 1954, the Administrator of the Reconstruction Finance Corporation shall make a full report to the Congress." 15 U.S.C.A. § 603 note.

8. Section 6 of Reorganization Plan No. 1 of 1957 reads as follows:

"Sec. 6. *Abolition of the Corporation.*

"(a) The Corporation is hereby abolished.

"(b) The Secretary of the Treasury shall retire the capital stock of the Corporation and, subject to the provisions of section 4 hereof, shall pay into the Treasury, as miscellaneous receipts, all unused funds of the Corporation.

"(c) Not later than June 30, 1959, the Secretary of the Treasury shall transmit a report to the Congress, which

report (1) shall cover the affairs of the Corporation up to the time of the taking effect of the provisions of this reorganization plan, and (2) shall correspond to the final report required by section 10 of the Reconstruction Finance Corporation Act, as amended (15 U.S.C. 609) [section 609 of this title]. The function of making the final report provided for in the said section 10 [section 609 of this title] is hereby abolished."

9. Defense Supplies Corporation v. Lawrence Warehouse Co., 336 U.S. 631, 634–635, 69 S.Ct. 762, 93 L.Ed. 931; Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634; Chairman of United States Maritime Commission v. California Eastern Line, Inc., 92 U.S.App.D.C. 207, 204 F.2d 398, 400.

10. It is true that § 9(b) of the Reorganization Act of 1949, 63 Stat. 206, 5 U.S.C.A.Cum.Supp. § 133z–7(b) provides a

did not go out of existence during this period.

If the succession of R.F.C. had been terminated between July 30, 1953, when the Reconstruction Finance Corporation Liquidation Act of that year was passed, and June 29, 1954, when the similar act of 1954 was passed, a procedure for avoiding abatement would have been available. The procedure there provided for is the same as that provided for in section 105 of the 1954 act, quoted in footnote 7, except that the 1953 procedure refers to "termination of succession" instead of "dissolution." But the succession of R.F.C. was not terminated during that period.

If R.F.C. had been dissolved between June 29, 1954, when the Reconstruction Finance Corporation Liquidation Act of that year was passed, and June 30, 1957, when Reorganization Plan No. 1 of 1957 became effective, abatement of this action could have been avoided by following the procedure set out in section 105 of the 1954 act, quoted above. But R.F.C. was not dissolved during that period.

On June 30, 1957, R.F.C. was "abolished" by operation of section 6 of Reorganization Plan No. 1 of 1957, which became effective on that day. The corporation therefore went out of existence on that day unless in addition to being "abolished" R.F.C. had to be, but was not, "dissolved" as that term is used in section 3(a) of the R.F.C. Act, as amended to June 29, 1954, before it could go out of existence.

Under section 3(a) of the R.F.C. Act, as amended to June 29, 1954, the corporation had "succession until it is dissolved pursuant to the provisions of section 10 of this Act." Under section 10, quoted in footnote 6, R.F.C. would not be dissolved until the Secretary of the Treasury had done five things: (1) Found that liquidation would no longer be advantageous to the United States; (2) found that all of the corporation's legal obligations had been provided for; (3) retired any capital stock then outstanding; (4) paid into the Treasury as miscellaneous receipts the unused balance of the moneys belonging to the corporation; and (5) made a final report to the Congress.

In the 1957 Reorganization Plan each of these five steps was provided for. Instead of requiring that the Secretary of the Treasury find that liquidation would no longer be advantageous to the United States, the President and Congress in effect made that finding themselves by transferring all of R.F.C.'s functions, assets and liabilities elsewhere, and abolishing the corporation. Instead of requiring that the Secretary of the Treasury find that all of the corporation's legal obligations had been provided for, the President and Congress expressly provided for such obligations in the 1957 Plan.

Under section 6(b) of the 1957 Plan the Secretary of the Treasury was expressly given the same duties as specified in steps (3) and (4) of the section 10 dissolution procedure referred to above. Fulfillment of these duties, however, was not made a condition of dissolution, termination of succession, or abolition of R.F.C. Abolishment of the corporation, provided for in section 6(a) of the 1957 Plan, was not made subject to any conditions whatsoever.

procedure for avoiding the abatement of actions against the head of any agency or other officer of the United States in his official capacity or in relation to the discharge of his official duties by reason of the taking effect of any reorganization plan authorized by that act. It is also true that on May 1, 1951, Reorganization Plan No. 1 of 1951, prepared and effectuated pursuant to the 1949 act, became effective. 65 Stat. 773, 15 U.S.C.A. § 601, 1959 Supp. p. 28.

But since the present action does not purport to be against the head or other officer of R.F.C., but is against the agency itself, the provision of § 9(b) of the Reorganization Act of 1949 for avoiding abatement would appear to be inapplicable to the present action. As will later appear, however, the result is the same whether or not the procedures for avoiding abatement as set out in § 9(b) of the 1949 act are deemed applicable here.

Under section 6(c) of that plan, the Secretary of the Treasury was given the duty of making a report to Congress "not later than June 30, 1959." Section 6(c) of the 1957 Plan further provides that the "function of making the final report provided for in the said section 10 is hereby abolished."

It follows from what has just been said that the provisions for dissolution of R.F.C., as set out in section 10 of the R.F.C. Act, were completely superseded by the provisions of Reorganization Plan No. 1 of 1957. From that time on R.F. C. in order to become nonexistent did not have to be "dissolved" under section 10 in addition to being "abolished" under the 1957 Plan.

We therefore conclude that R.F.C. went out of existence on June 30, 1957, on which date the provisions of section 10 of the R.F.C. Act, relating to dissolution of the corporation, were no longer effective. Under the common-law rule to which reference has been made this action abated on that day unless there was then in effect a statute providing procedure for avoiding abatement of the action, and such procedure was followed.

In our opinion such procedure was provided by section 105 of the Reconstruction Finance Corporation Liquidation Act, as amended to June 29, 1954. It is true that the procedure set out in that section, which is quoted earlier in this opinion, refers to abatement "by reason of the dissolution of the Corporation." It is also true, as we have stated above, that dissolution as provided for in section 10 of the R.F.C. Act has never taken place because that section has been superseded by the provisions of the 1957 Reorganization Plan. In our view, however, the abolishment accomplished by the latter plan was also a "dissolution" within the meaning of section 105.

The latter section is not a part of the R.F.C. Act and was therefore not necessarily superseded by the provisions of the 1957 Plan which relates only to

the latter act. The 1957 Plan did not expressly repeal section 105, and a repeal by implication is precluded.[11]

The word "abolish" was used in Reorganization Plan No. 1 of 1957 because the plan was promulgated under authority of the Reorganization Act of 1949, and that act uses the word "abolish." The latter act applies not only to government corporations, but also to executive departments, commissions, councils and the like. The term "dissolve" would have been inappropriate with reference to such departments and agencies and so the broader term "abolish" was used. But it cannot be doubted that unless the term "dissolved" is used in some special sense in section 105 a corporation which is abolished is also dissolved. In either event its succession is terminated. Moreover, all of the steps prescribed by section 10 of the R.F.C. Act are also required by the 1957 Plan.

To hold otherwise than here indicated is to assume that the President and Congress in effectuating the 1957 Plan desired to abandon the previous policy of providing a method of avoiding the abatement of actions upon the termination of succession by R.F.C. There is nothing in that plan or elsewhere in the statutes or legislative history to indicate any such purpose.

But while the procedures pertaining to the avoidance of abatement as provided for in section 105 were available to prevent the abatement of this action after the abolishment of R.F.C. on June 30, 1957, they were not utilized. The action therefore abated on June 30, 1958, when the period of taking advantage of those procedures expired, unless for one of the other reasons urged by appellant this result does not follow. See Defense Supplies Corporation v. Lawrence Warehouse Co., 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931.

█ Monolith argues that abatement was forestalled by reason of provisions of the statutes of California, or of the

11. See § 9(a) (1) of Reorganization Act of 1949, 63 Stat. 206, 5 U.S.C.A.Cum.Supp. § 133z-7(a) (1).

Code of the District of Columbia, or of Rule 25(c), Federal Rules of Civil Procedure, 28 U.S.C.A., which, it is asserted, provide procedures for substitution of the Administrator for R.F.C. While there are a number of reasons why this contention is without merit, it is sufficient to say that since Congress provided by section 105 a specific procedure to be followed any contrary provisions of the statutes, code, or rules referred to are inapplicable.

■ Monolith also urges that the 1957 Plan was intended to accomplish an automatic substitution of parties, thus making it unnecessary to follow the procedure set out in section 105. In this connection reference is made to portions of the message of President Eisenhower in transmitting this plan to Congress. 1957 U.S.Code Cong. & Admin. News, pp. 951–952.[12] In this message it is recited that the plan transfers the pertinent assets of the corporation to the respective agencies together with the related liabilities, "and by operation of law substitutes the particular transferee for the corporation with respect to all the instruments of every kind and character pertaining to the transferred functions, assets, and liabilities."

As R.F.C. points out, the quoted words do not say that the transferees are substituted as parties to existing lawsuits. Read in context, they refer to the transfer of assets and liabilities as provided in section 3 of the plan. The automatic substitution, according to the President's message, is with respect to the "instruments" pertaining to the transferred functions, assets and liabilities. By no reasonable inference could this include lawsuits.

It is also stated in this message that "the transferees will be enabled, with respect to the transferred functions, to sue and be sued * * *." It is not stated in this or any other part of the message, however, that there are no procedures to be followed in taking advantage of the preserved right to sue the transferee. Had this been the intention one would expect to find in the 1957 Plan some provision explicitly so providing.

Not only is such a provision lacking, but section 105 of the Reconstruction Finance Corporation Liquidation Act prescribing a procedure to be followed was left intact. If appellant had followed the procedure prescribed by that section it would have been able to maintain this suit against the Administrator of General Services, the transferee in this case.

■ Monolith earnestly contends that under the facts of this case R.F.C. is estopped to attack Monolith's failure to move for substitution within the year allowed by section 105. The statute in question did not allow the officers and attorneys of R.F.C. to extend the time. This being so, their failure to advise Monolith that time was running out could not work an estoppel.[13]

■ Monolith asserts that a line of cases arising during the administration of the Office of Price Administration and certain other cases establish the rule that where the United States is the real party

12. The portion relied upon by appellant is shown in italics.

"The Plan also transfers the pertinent assets of the Corporation to the respective agencies, together with the related liabilities, *and by operation of law substitutes the particular transferee for the Corporation* with respect to all instruments of every kind and character pertaining to the transferred functions, assets, and liabilities. In order to permit the transferees to administer the transferred matters with the same flexibility of operation as obtains at present, the plan transfers to each transferee those powers, authority, rights, and immunities which are now available or applicable to the Corporation for carrying out the respective functions. *To the extent that it becomes necessary or desirable, therefore, the transferees will be enabled, with respect to the transferred functions, to sue and be sued,* to engage private attorneys in conjunction with litigation involving the transferred functions. * * *"

13. See Snyder v. Buck, 340 U.S. 15, 19, 71 S.Ct. 93, 95 L.Ed. 15; Poindexter v. Folsom, 3 Cir., 242 F.2d 516. See, also, United States v. Jones, 9 Cir., 176 F.2d 278, 281.

in interest tardy substitution is allowed. It is Monolith's contention that this is such a case. All but two of the cases cited in support of this argument were decided prior to the Lawrence Warehouse Co. case, supra. The Seventh Circuit, relying on the latter case, refused to follow these earlier cases. Bowles v. Wilke, 7 Cir., 175 F.2d 35. The Supreme Court later reached the same result in Snyder v. Buck, 340 U.S. 15, 71 S.Ct. 93, 95 L. Ed. 15. In the two cases subsequent to the Lawrence Warehouse Co. case [14] relied upon by Monolith the substitution was timely. We find this contention to be without merit.

Monolith contends in effect that the nature of this action is for just compensation for a taking under the Fifth Amendment. But this contention was in effect determined adversely to Monolith on the prior appeal. Monolith Portland Midwest Company v. R.F.C., 9 Cir., 240 F.2d 444. Termination of the contract pursuant to the Contract Settlement Act of 1944 frustrated Monolith in obtaining anticipated profits and advantages therefrom. But, as the Supreme Court said in Omnia Commercial Co., Inc. v. United States, 261 U.S. 502, 513, 43 S.Ct. 437, 439, 67 L.Ed. 773, "Frustration and appropriation are essentially different things." There was here no taking of Monolith's property which entitled the company to just compensation under the Fifth Amendment.[15]

Moreover, even if the principle of just compensation is involved, it still must be established that the United States has consented to be sued for the recovery of such compensation. The United States may withhold, withdraw, or condition that consent any way it chooses. Laycock v. United States, 9 Cir., 230 F.2d 848, 850. Here the United States had conditioned such consent upon compli-

ance with the procedure prescribed in section 105. That procedure has not been followed.

There has been no lack of due process, and the procedures prescribed are not constitutionally void for vagueness. The 1957 Reorganization Plan very plainly superseded the dissolution procedure of section 10 of the R. F.C. Act. It also retained in effect, but with respect to the dissolution accomplished by section 6 of the 1957 Plan, the procedures prescribed in section 105 whereby abatement could be avoided. But if it did not retain those procedures in effect, there were no procedures which could be used in avoiding abatement. Therefore, whether or not the 1957 Plan retained in effect the procedures prescribed in section 105, this action has abated.

Affirmed.

14. Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375; United States v. Allied Oil Corporation, 341 U.S. 1, 71 S.Ct. 544, 95 L.Ed. 697.

15. See, in addition to Omnia Commercial Co., Inc. v. United States, supra, United States v. Grand River Dam Authority, 363 U.S. 229, 80 S.Ct. 1134, 4 L.Ed.2d 1186, decided June 13, 1960, and cases there cited; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694.